```
                 IN THE UNITED STATES DISTRICT COURT

                  FOR THE WESTERN DISTRICT OF TEXAS

                            WACO DIVISION

SMARTER AGENT, LLC              *
                                *
                                *
VS.                             *  CIVIL ACTION NO. W-19-CV-182
                                *
REAL ESTATE WEBMASTERS, INC.    *     October 9, 2019

       BEFORE THE HONORABLE ALAN D ALBRIGHT, JUDGE PRESIDING
                 TELEPHONIC SCHEDULING CONFERENCE

APPEARANCES:

For the Plaintiff:   Steven Robert Sprinkle, Esq.
                     Sprinkle IP Law Group
                     1301 W. 25th Street, Suite 408
                     Austin, TX 78705

                     Jeffrey G. Toler, Esq.
                     Toler Law Group, PC
                     8500 Bluffstone Cove, Suite A201
                     Austin, TX 78759

For the Defendant:   Gilbert Andrew Greene, Esq.
                     Jun Zheng, Esq.
                     Duane Morris LLP
                     900 S. Capital of Texas Highway, Suite 300
                     Austin, TX 78746

Court Reporter:      Kristie M. Davis
                     United States District Court
                     PO Box 20994
                     Waco, Texas 76702-0994



    Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.
```

```
 1            (October 9, 2019, 4:44 p.m.)
 2            THE COURT:  Good afternoon.  How are y'all?
 3            MR. SPRINKLE:  Good, Your Honor.  How are you?
 4            THE COURT:  Very well.  I heard Mr. Sprinkle on the phone.
 5   Do we have Mr. Sprinkle, Mr. Toler, Jun -- Jun, if you could
 6   pronounce your last name for me.
 7            (Brief off-the-record discussion.)
 8            THE COURT:  Mr. Greene, okay.  You were in a different --
 9   Mr. Greene, do I have you?
10            MR. GREENE:  Your Honor, I am on the line.
11            THE COURT:  Okay.  And, Mr. Greene, you're going to be
12   speaking on behalf of defendants?
13            MR. GREENE:  I am, Your Honor.  I've got some folks with
14   me as well.  My colleague Jun Zheng is on the line, and I have
15   a couple of folks from my client Real Estate Webmasters Morgan
16   Carey who is the CEO who's on the line and Vy Luu who's the
17   general manager is on the line as well.
18            THE COURT:  Well, welcome to them.  I always appreciate
19   when clients are on board.  I think that's a good thing.
20            So have -- Mr. Toler and Mr. -- oh, I think Josh Yi told
21   me that maybe you guys wanted to push back the deadlines
22   because you thought you might be working this case out, but --
23   and so if that's true, I'll let Mr. Toler go first, but if it
24   would help to push back this scheduling conference to allow you
25   guys some time to work stuff out, happy to do it.  If you tell
```

1  me you want me to go ahead and set stuff, I'm happy to do that.
2       So, Mr. Toler, tell me what you want.
3       MR. TOLER:  Thank you, Your Honor.  So the plaintiff
4  originally wanted the default schedule, the standard schedule,
5  but the defendants didn't want the default schedule based on --
6  my understanding based on a claim of the damages in this case
7  being very low.  So as a proposal, we proposed to do discovery,
8  limited discovery on damages first for the 45 day period and
9  then thereafter our proposal was we would assess the results of
10 that discovery and then, you know, coordinate scheduling
11 discussions accordingly based on what we found out.  So that's
12 what we were seeking is either the standard schedule or a
13 limited target discovery on damages first followed up by
14 reporting back to the Court to discuss schedule.
15      THE COURT:  Mr. Greene, how do you feel about that?
16      MR. GREENE:  Judge Albright, let me -- if you'll indulge
17 me -- give you a little bit of context, and the reason why the
18 folks from Real Estate Webmasters wanted to participate in the
19 hearing today is they're a very small company up in Canada.
20 They got about 120ish employees.  This is their first time ever
21 to be involved in any sort of patent litigation, including in
22 the U.S.  So this case is really a big deal to them.  You know,
23 it's a pretty unique situation, Judge Albright.  The revenue
24 for the accused products in this case which are some apps that
25 realtors put out there for prospective customers to use, the

1  apps that are accused in this case, the historical revenue
2  going back to inception, which is like 2013, is less than
3  $500,000.  And so in our view, Judge Albright, it just doesn't
4  make sense to proceed on a traditional schedule in this case.
5  And so we think it makes sense to try to find a more efficient
6  way to resolve the case.  So early on we disclosed to the
7  plaintiffs that low revenue amount and even offered to give
8  them a declaration, you know, verifying that amount of revenue
9  in hopes of convincing this case just isn't worth anyone's
10 time, and of course they pushed back and they want to actually
11 do formal discovery on that, and so we're not opposed to the
12 concept of giving them some early discovery on that, but the --
13 sort of the nightmare scenario we fear is that we give them an
14 early, you know, look at that discovery that they otherwise,
15 you know, wouldn't be entitled to under the Court's policies
16 and procedures and then, you know, they get that look and then
17 they want to push forward with the regular traditional schedule
18 and then we've spent the money on the discovery and now we're
19 still back where we would have been at the beginning.  And so
20 we think it makes sense, Judge Albright, if we're going to give
21 them that early discovery that we also bake into the schedule
22 some sort of mechanism to try to resolve the case short of just
23 diving head long into the normal schedule with contentions and
24 Markman briefing, all things that in our view will run up, you
25 know, fees in this case far in excess of the best case

1  potential damages for the plaintiff.  And so what we would like
2  to see, if we're going to give them that early discovery, is an
3  opportunity to resolve the case on summary judgment on the
4  Section 101 issue.  We believe these patents have a serious 101
5  problem, and given the unique kind of situation of the case, we
6  don't know that it's fair to us to have to litigate that issue
7  in the scope of the broader types of disclosures and
8  contentions and such just given the low amount of revenue at
9  stake.
10         THE COURT:  Mr. Toler?
11         MR. TOLER:  Yes.  Well, so we're not convinced that the
12 amount of revenue at stake is the 500,000 that was quoted.
13 That's why we wanted the targeted limited discovery.  Our
14 understanding is that the defendant has total revenue in the
15 five to $10 million annual range and that they sell products
16 related to the technology in this case to thousands and
17 thousands of realtors that have access to the app.  So, you
18 know, we're seeking -- we can't -- our client can't just take
19 their word for it that this is the only revenue attributable to
20 the eight patents-in-suit.  So we're asking for either stick to
21 the normal default schedule or if defendants want something
22 different than that, we really need to understand more about
23 the revenue and the customers and the usage so that we can then
24 come back to the Court recommending some alternative to the
25 default schedule.  That's where we are.

1        And then, lastly, Your Honor, the defendants could have
2   filed a 101 motion in the beginning of this case and, you know,
3   they could have done that months ago but chose not.  So we
4   don't see any reason to deviate from the schedule now and to
5   just put defendant's preferred issue in front of the Court
6   first before everything else.
7        THE COURT:  Okay.  Well, let me -- I'm going to put you on
8   hold for just one second.
9        (Off-the-record discussion.)
10       THE COURT:  So obviously both sides have meritorious
11  reasons why they want to proceed.
12       Mr. Toler, what are you thinking about in terms of -- what
13  discovery do you -- are you asking me to allow you to take?
14       MR. TOLER:  We have proposed five document requests, five
15  interrogatories and five requests to admit and then one
16  deposition of the financial person for up to seven hours.
17       THE COURT:  And that would be a 30(b)(6) on it?
18       MR. TOLER:  Yes.  Yes, Your Honor.
19       THE COURT:  Got you.  Okay.
20       Mr. Greene?
21       MR. GREENE:  Yes, Your Honor.
22       THE COURT:  Your turn.  Tell me if you --
23       (Laughter.)
24       MR. GREENE:  If the question is how do we feel about those
25  specific numbers for the discovery, I don't think we have a

1   problem with the five doc request, the five requests for
2   admissions, five interrogatories.  Seven hours of depo time
3   specifically on the issue of revenue for these accused apps
4   seems excessive to us, frankly.  We would want to limit that to
5   something less than seven hours of deposition time.  Other than
6   that, but the quantity is not objectionable to us.
7         THE COURT:  Well, here's what I'm going to do.  I'm going
8   to allow them to have everything that they asked for, including
9   the seven hours for the deposition.  If you get to the point in
10  the deposition where, Mr. Greene, where you feel like things
11  aren't being productive and are repetitive and unfair, you just
12  give me a call and I'll weigh in.  You know, if they feel like
13  they need seven hours to cover everything and they're doing it
14  in a manner that I would think is professional and not
15  repetitive, they get seven hours.  I'm with you.  I think it's
16  hard to imagine it taking that long, but I'm not going to tell
17  them in advance they can't have it, but you're going to be
18  there or someone's going to be there who can -- this is -- what
19  I'm trying to get here is where if either one of you at a
20  deposition says, if you don't quit that, I'm going to call the
21  Court, you know, you really can call the Court and I really
22  will handle it immediately.
23        That being said, in exchange for that I'm going to hold
24  off on imposing any of the ordinary scheduling, and then after
25  you take the deposition, give me a call, give Josh Yi a call

1    and tell him that the deposition has been completed.  I'm going
2    to have another call just like this and we're going to assess
3    where we're at.  The possibilities I see taking place are, one,
4    I'll permit the defendant to file a motion for summary judgment
5    on the 101 issue.
6         Number two, instead of doing that right away, I'll order
7    that you guys mediate probably in front of my magistrate here
8    in Waco who's very good at doing it and who's free.  If you
9    guys don't want to do that and agree that you'd rather use
10   someone else and pay for it, if you both agree to that, that's
11   perfectly fine with me.  But if either side says, no.  Free is
12   better -- and Jeff's a really good -- really good mediator,
13   then he's available unless you both say, we'd rather use
14   somebody else, and, you know, there a bunch of good mediators
15   out there so that would be fine with me.
16        And then, number three, after the plaintiff has this
17   information, if they tell me that based on the information that
18   they feel like the case is worth pursuing because they can
19   justify that there really are X number of -- I mean, my general
20   sense -- I know Mr. Sprinkle pretty well.  He and I were
21   partners a million years ago, but -- and so I have a great deal
22   of respect for him.  I know Mr. Toler well.  I know -- you
23   know, I know Mr. Greene well.  So I have a great amount of
24   respect for all of you.  If after the plaintiff -- I don't
25   expect the plaintiffs are going to pursue a case -- and I'm

1  saying this for the benefit of the clients online -- if it
2  doesn't merit it.  You know, they don't want to spend the money
3  to go through the Markman process and go through trial either.
4  So once they have the information and they come back and
5  tell -- and the plaintiffs tell me, gosh, Judge.  This is what
6  we found.  We do want to move forward.  Then I'll find some way
7  of running the Markman process in parallel with the 101 motion
8  that protects both sides.
9       Also, I don't know that you have yet entered a protective
10 order.  I will in advance tell you that whatever financial
11 information is obtained should be treated as highly
12 confidential.  And -- but obviously it's going to have to be
13 shared.  Some of it will have to be shared with the
14 plaintiff -- the plaintiff -- with Mr. Toler's client to help
15 them assess the value of the case, but everyone needs to treat
16 the information that they obtain with the utmost confidence.
17      So having said all that, Mr. Toler, is there anything else
18 we need to take up at this time?
19      MR. TOLER:  Your Honor, just one more question for you
20 regarding the protective order.  Can I have a damages expert
21 review the information?
22      THE COURT:  You can have a damages expert review that, but
23 they need to do the same -- they need to be under the same
24 riggers that we would throughout the entire case and it needs
25 to be protected in the way that I'm confident any normal

1  damages expert would do that.  Yeah.  That's absolutely fine
2  with me.
3       MR. TOLER:  Thank you, Your Honor.
4       THE COURT:  And, again, I'll allow Mr. Greene to explain
5  to the clients, his clients what that means or I can do it now.
6       But, Mr. Greene, I'm assuming you can explain to your
7  clients why it is I'm allowing just an expert to look at it,
8  but I'm happy to do it if you want me to.
9       MR. GREENE:  No.  That's fine, Your Honor.
10       I will say, Your Honor, I feel I would be remiss if I
11  didn't say.  You know, I'm not casting aspersions at
12  Mr. Sprinkle or Mr. Toler, but there is a concern on our end
13  that whatever the dollar amount is, their client will still see
14  value in pursuing this case solely to extract a pound of flesh
15  out of my client, and if that ends up being the case, we're
16  certainly going to want to be back in front of you, Your Honor,
17  talking about how to get redress for this case being used for
18  improper purposes.
19       THE COURT:  Well, I think when you guys mediate the case,
20  if that is a legitimate concern of yours -- I didn't mean to
21  say it that way.  If that is a concern of yours, I'm going to
22  presume it's legitimate, then I will require you to do the
23  mediation in front of Judge Manske, and I think he will be able
24  to tell from the numbers that are involved -- I will rely on
25  him.  I'm not going to inquire of him about specifics, but I am

1  certainly going to ask him if he thought both parties acted in
2  good faith in trying to settle the case, and I think he will be
3  abundantly aware of what that means.
4      MR. GREENE:  Fair enough.  Understood, Your Honor.
5      THE COURT:  And so he -- I think if the numbers are at one
6  end, he will feel the case should settle for X, and if they're
7  at the other end, he'll understand why you want Y, but in
8  either way, if he tells -- if he tells me that both parties
9  acted in good faith, that the mediation based on the
10 information that's gleaned from the deposition, then we'll have
11 no problems.  Does that give you the comfort you need, Mr.
12 Greene?
13     MR. GREENE:  It does, Your Honor.  Thank you very much.
14 We appreciate it.
15     THE COURT:  Okay.  I think I asked though, Mr. Toler, did
16 you have anything else we needed to take up?
17     MR. TOLER:  No, Your Honor.  Other than I would like to
18 say that we will agree to mediate in front of the magistrate.
19     THE COURT:  Okay.  And, Mr. Greene, is that okay with you?
20     MR. GREENE:  Yeah.  I'd certainly want to confer with my
21 client, Your Honor, but in concept and principle that seems to
22 make sense to us.
23     THE COURT:  Well, I'm strongly encouraging it because
24 really my magistrate will be, in my opinion, the best
25 protection your clients have that -- and, again, I know

1   Mr. Sprinkle really well.  I have great respect for him.  I
2   know Mr. Toler well, have great respect for him.  So I have
3   less of a concern than you do, but I certainly understand why
4   you have that concern because of course they've got a client
5   who -- you know, who I don't know and who's going to be
6   interested in getting this case resolved.  So it would be very
7   beneficial for me to have my magistrate do the mediation which
8   either will result in a settlement or will result in him
9   telling me whether or not everyone engaged in good faith by the
10  demands and offers that they made based on the sales
11  information that will be gotten in the discovery.
12       MR. GREENE:  Understood, Your Honor.  And, again, I mean,
13  the concern is more based on the fact that -- I'm sure you've
14  been in this situation back when you were in private practice
15  where you had competitors or even ex-competitors litigating
16  against each other.  Sometimes there are strong feelings that
17  cause the case to be more about, you know, just the money.
18       THE COURT:  Understood.  That's why Jeff Manske will make
19  sure on my behalf that when they're -- when you guys are
20  mediating that it is just about the money.
21       MR. GREENE:  Understood.  And thank you very much.
22       THE COURT:  Okay.  Y'all have a great afternoon.
23       (Hearing adjourned at 5:07 p.m.)
24
25

```
 1  UNITED STATES DISTRICT COURT  )
 2  WESTERN DISTRICT OF TEXAS     )
 3
 4       I, Kristie M. Davis, Official Court Reporter for the
 5  United States District Court, Western District of Texas, do
 6  certify that the foregoing is a correct transcript from the
 7  record of proceedings in the above-entitled matter.
 8       I certify that the transcript fees and format comply with
 9  those prescribed by the Court and Judicial Conference of the
10  United States.
11       Certified to by me this 20th day of October 2019.
12
                             /s/ Kristie M. Davis
13                           KRISTIE M. DAVIS
                             Official Court Reporter
14                           800 Franklin Avenue, Suite 316
                             Waco, Texas 76701
15                           (254) 340-6114
                             kmdaviscsr@yahoo.com
16
17
18
19
20
21
22
23
24
25
```