**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **SMARTER AGENT, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **Case No. 6:19-cv-00182-ADA** |
| | § | |
| **REAL ESTATE WEBMASTERS, INC.,** | § | **Jury Trial Demanded** |
| | § | |
| **Defendant.** | § | |
| | § | |

**DEFENDANT REAL ESTATE WEBMASTERS, INC.'S
<u>RESPONSIVE CLAIM CONSTRUCTION BRIEF</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION .......................................................................................................1

II.     BACKGROUND .........................................................................................................1

III.    APPLICABLE LAW ...................................................................................................3

IV.     AGREED CONSTRUCTIONS ...................................................................................5

V.      DISPUTED CONSTRUCTIONS ...............................................................................5

        A.      The meaning and scope of "dynamically updated" is "updated to reflect
                changing weather conditions at a landmark." .......................................... 6

        B.      The scope of "automatically" is "without user intervention." ............................... 10

        C.      The scope of "directly" is "from an initial origin to a final destination
                without passing through an intermediate location." ............................................... 13

        D.      The scope of "information system" is "a server." ................................. 16

        E.      The scope of "review" is "critical appraisal intended for the guidance of
                consumers." .................................................................................................... 20

        F.      The relative time term "substantially simultaneously" is indefinite. ................... 22

        G.      The relative location terms "being at," "different," "located at," "outside,"
                "proximate to," and "remote from" are indefinite. ................................................. 26

VI.     CONCLUSION ..........................................................................................................30

DM2\14406540.1

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Novopharm Ltd.*, 323 F.3d 1324 (Fed. Cir. 2003) ...................................................7

*Absolute Software, Inc. v. Stealth Signal, Inc.*, No. H-05-1416, 2009 WL 2217536
    (S.D. Tex. June 17, 2009) ...................................................................................................12

*Alifax Holding SpA v. Alcor Sci. Inc.*, No. 14-440, 2017 WL 1533430
    (D.R.I. Apr. 27, 2017) ........................................................................................................25

*Ampex Corp. v. Eastman Kodak Co.*, 460 F. Supp. 2d 541 (D. Del. 2006)...................................15

*Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298
    (Fed. Cir. 2003)............................................................................................................ 24-25

*Ancora Techs., Inc. v. Apple, Inc.*, 744 F.3d 732 (Fed. Cir. 2014) .................................................3

*Arthrex, Inc. v. Smith & Nephew, Inc*, No. 2:15-cv-1047, 2016 WL 4211504
    (E.D. Tex. Aug. 10, 2016) ..................................................................................................28

*Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367 (Fed. Cir. 2004) ......................15

*C & C Jewelry MFG., Inc. v. West*, No. 09-1303, 2010 WL 2681921
    (N.D. Cal. July 6, 2010).....................................................................................................23

*Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*, 382 F. Supp. 3d 586
    (E.D. Tex. 2019) .................................................................................................................23

*Deere & Co. v. Bush Hog*, LLC, 703 F.3d 1349 (Fed. Cir. 2012)................................................24

*Dibble v. Fenimore*, 545 F.3d 208 (2d Cir. 2008) ..........................................................................8

*Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358 (Fed. Cir. 2001)................................................24

*Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1334 (Fed. Cir. 2009) ..........................24

*Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325 (Fed. Cir. 2010)........................................24

*Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572 (Fed. Cir. 1996) ...................15

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332
    (Fed. Cir. 2018)..................................................................................................................24

*Fractus, S.A. v. AT&T Mobility LLC*, No. 2:18-CV-00135, 2019 WL 1641357
    (E.D. Tex. Apr. 16, 2019) ..................................................................................................24

*Halliburton Energy Servs., Inc. v. M–I LLC*, 514 F.3d 1244 (Fed. Cir. 2008).............................27

DM2\14406540.1

*Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312 (Fed. Cir. 2016) ............................4

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111
    (Fed. Cir. 2004)........................................................................................................15

*Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364 (Fed. Cir. 2014)...................................24, 30

*Keranos, LLC v. Silicon Storage Tech., Inc.*, No. 2:13-CV-17, 2014 WL 47749
    (E.D. Tex. Jan. 3, 2014).......................................................................................... 7-8

*KLA-Tencor Corp. v. Xitronix Corp.*, No. A–08–CA–723, 2011 WL 318123
    (W.D. Tex. Jan. 31, 2011)........................................................................................23

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc),
    *aff'd* 517 U.S. 370 (1996) .................................................................................2, 4, 6

*Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275 (Fed. Cir. 2017)...............................28

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014) ..........................................*Passim*

*NobelBiz., Inc. v. Global Connect, L.L.C.*, 701 Fed. Appx. 994 (Fed. Cir. 2017).........................4

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351
    (Fed. Cir. 2008)............................................................................................ 3-4, 19, 25

*Omax Corp. v. Flow Intern. Corp.*, No. C04-2334L, 2006 WL 3249190
    (W.D. Wash. Nov. 7, 2006) .....................................................................................12

*Otter Products, LLC v. Treefrog Developments Inc.*, No. 11-CV-02180, 2012 WL
    4468211 (D. Colo. Sept. 27, 2012) ...........................................................................8

*Personalized User Model LLP v. Google, Inc.*, No. 09-525, 2012 WL 295048
    (D. Del. Jan. 25, 2012).................................................................................................3

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc) .................................................3

*Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818
    (Fed. Cir. 1983).....................................................................................................24, 27

*Serverside Group Ltd. v. Tactical 8 Techs., L.L.C.*, 927 F. Supp. 2d 623
    (N.D. Iowa 2013) .......................................................................................................18

*SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187 (Fed. Cir. 2013) .................................................7

*Skyhook Wireless, Inc. v. Google, Inc.*, No. 10–11571, 2014 WL 898595
    (D. Mass. Mar. 6, 2014)............................................................................................28

*SRI Intern., Inc. v. Internet Sec. Sys., Inc.*, No. 04-1199, 2006 WL 2949305
    (D. Del. Oct. 17, 2006) .............................................................................................11

*Synvasive Corp. v. Stryker Corp.*, 478 F. Supp. 2d 1193 (E.D. Cal. 2007) ...................................25

*TF3 Ltd. v. Tre Milano, LLC*, 894 F.3d 1366 (Fed. Cir. 2018)........................................................7

*Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190 (Fed. Cir. 2017) .................................24

*Transcenic, Inc. v. Google Inc.*, 7 F. Supp. 3d 405 (D. Del. 2013) ...............................................25

*Vasudevan Software, Inc. v. Intl. Bus. Machines Corp.*, No. C-09-05897, 2011
    WL 196884 (N.D. Cal. Jan. 20, 2011) .....................................................................................6

*Verve, LLC v. Crane Cams, Inc.*, 311 F.3d 1116 (Fed. Cir. 2002) ...............................................24

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ..........................................4

*Vstream Technologies, LLC v. PLR Holdings, LLC*, No. 6:15-cv-974, 2016 WL
    6211550 (E.D. Tex. Sept. 27, 2016) .......................................................................................23

DM2\14406540.1

### **TABLE OF EXHIBITS**

Ex. 1 – Board Decision in Reexam Cancelling All Claims of U.S. Patent No. 6,385,541

Ex. 2 – Board Decision in Reexam Cancelling All Claims of U.S. Patent No. 7,072,665

Ex. 3 – Board Decision in Reexam Cancelling All Claims of U.S. Patent No. 6,496,776

Ex. 4 – Excerpts from *Oxford English Dictionary*

Ex. 5 – Excerpts from *Webster's Third New International Dictionary*

Ex. 6 – '628 Patent File History, February 27, 2008 Office Action Response

Ex. 7 – '550 Patent File History, Original Listing of Claims

Ex. 8 – Excerpts from *Microsoft Computer Dictionary*

Ex. 9 – Excerpts from *Barron's Dictionary of Computer and Internet Terms*

Ex. 10 – '795 Patent File History, November 25, 2008 Office Action Response

DM2\14406540.1

## I.     INTRODUCTION

The Smarter Agent patentees did not invent smartphone technology, mobile computing technology, or GPS technology. Indeed, the patentees did not "invent" anything at all. Far from being "novel but straightforward inventions" as Smarter Agent contends, *see* Opening Br. at 17, every patent in this family that has been challenged at the Patent and Trademark Office has been invalidated over the prior art. *See* Ex. 1 at p. 38 (Decision on Appeal affirming rejection of claims 1–51 of U.S. Patent No. 6,385,541); Ex. 2 at p. 28 (Decision on Appeal affirming rejection of claims 1–36 of U.S. Patent No. 7,072,665); Ex. 3 at p. 35 (Decision on Appeal affirming rejection of claims 1–47 of U.S. Patent No. 6,496,776).

The Asserted Patents[1] purport to be "location-based" patents that allow a user to access information about the user's surroundings based on the user's location. But Smarter Agent did not originate any of the technology that enables a user to obtain information in this way. And despite purportedly being "location-based" inventions, the relevant specifications contain no information that would inform a skilled artisan what it means to be at, near, or far away from a given location. The asserted claims that include relative location terms are therefore indefinite and should meet the same fate as their family members that have already been invalidated by the USPTO.[2]

## II.     BACKGROUND

The parties' disputes are, with the exception of one claim term, disagreements as to scope and not meaning. A primary purpose of claim construction is to explain to a jury what the words of a claim would mean to a person of ordinary skill in the art who has read the specification and

---

[1] The Asserted Patents are Exhibits 1–8 to Smarter Agent's Opening Claim Construction Brief. Dkt. Nos. 42-1–42-8.

[2] The asserted claims are also directed to unpatentable subject matter and are invalid over the prior art, which will be the subject of future motion practice by Defendant outside of the claim construction process.

1

file history, *i.e.*, meaning, and, in light of that meaning, what that skilled artisan would understand to be the boundaries of the patent claim, *i.e.*, scope.

A patent must conclude with claims "particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112(b). Resolving the meaning of a term is necessary because often the skilled artisan has a more specialized understanding of the term than a layperson does, and it would be improper for the jury to apply their lay understanding of a term to resolve questions of infringement and invalidity. Sometimes, resolving the meaning of the words also resolves the scope of a claim term, but if not, the court must then set forth its scope for the jury. If the claims are not indefinite, a skilled artisan will understand where the patent monopoly ends and permitted activity begins after reading the specification and file history. A lay jury, on the other hand, oftentimes must have the scope explicitly articulated in the form of a claim construction so jurors can apply the skilled artisan's understanding of the claim boundaries rather than their own lay understanding.

Per the Court's procedures, the parties met and conferred on June 17, 2021, to discuss their proposed constructions and attempt to reach agreement on disputed claim terms. For each term, counsel for Real Estate Webmasters ("REW") focused on the analysis articulated in *Markman*, *Philips*, and their progeny to pinpoint the precise source of the parties' disagreement, asking: Do either the lexicography or the disclaimer exceptions apply, and if so, where is the support in the specification and file history? If those exceptions don't apply, the term has its ordinary meaning to a skilled artisan; how, then, should the scope of the term be articulated for the jury?

During that meeting, for the claim terms that are not indefinite, counsel for REW articulated a proposed scope of the term. Counsel for Smarter Agent refused to do so, instead stating only that REW's proposals were "within the scope but do not encompass the scope" of a

given claim term. By refusing to take a position, Smarter Agent is leaving some unarticulated conceptual space between the claim boundary articulated by REW and its supposed true boundary. This improperly lets the jury decide where the patent monopoly begins and ends.

Therefore, to avoid leaving it to the jury to resolve the parties' disagreements as to claim scope, REW asks the Court to reject Smarter Agent's non-constructions and adopt REW's constructions instead.

## III.    APPLICABLE LAW

"The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'" *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996)). "When the parties raise an actual dispute regarding the proper scope of [the] claims, the court, not the jury, must resolve that dispute." *Id.* (citing *Markman*, 52 F.3d at 979 (holding that claim construction is a matter of law)).

"Words of a claim are generally given their ordinary and customary meaning, which is the meaning a term would have to a person of ordinary skill in the art after reviewing the intrinsic record at the time of the invention." *Id.* (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc)).[3] The exceptions to this principle are (1) when the patentee sets out a definition and acts as his own lexicographer, and (2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution. *See Ancora Techs., Inc. v. Apple, Inc.*, 744 F.3d 732, 734 (Fed. Cir. 2014). ("A claim term should be given its ordinary meaning in the pertinent context, unless the patentee has made clear its adoption of a different definition or

---

[3] When REW uses "ordinary meaning" in this brief, REW means the ordinary meaning (1) to a person of ordinary skill in the art (2) at the time of invention (3) after reviewing the intrinsic record, *i.e.*, the specification and file history. *Phillips*, 415 F.3d at 1313.

otherwise disclaimed that meaning."); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582–83 (Fed. Cir. 1996). An "ordinary meaning" construction is another way of saying that the lexicography and disclaimer exceptions do not apply. *See id.*

Advocating for ordinary meaning does not excuse a party from stating what it contends is that meaning. *See Markman*, 52 F.3d at 976; Robert A. Matthews, Jr., 1 Annotated Patent Digest § 4:5 ("Advocating for ordinary meaning does not excuse a party from stating what it contends is that meaning") (collecting cases). In other words, a party must articulate the scope of a claim term when the scope is not clear from its meaning. *See id.*

A claim term should be given a construction when the parties dispute "not the meaning of the words themselves, but the *scope* that should be encompassed by th[e] claim language." *See O2 Micro*, 521 F.3d at 1361 (emphasis in original); *see also*, *e.g.*, *NobelBiz., Inc. v. Global Connect, L.L.C.*, 701 Fed. Appx. 994, 997–998 (Fed. Cir. 2017) (reversing lower court construction of "plain and ordinary meaning"); *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1321–1322 (Fed. Cir. 2016) ("plain and ordinary meaning" is inadequate when that does not resolve the parties' dispute). "[I]t is only fair (and statutorily required) that competitors be able to ascertain to a reasonable degree the scope of the patentee's right to exclude." *Markman*, 52 F.3d at 978 (internal citations omitted). "[C]ompetitors should be able to rest assured, if infringement litigation occurs, that a judge, trained in the law, will similarly analyze the text of the patent and its associated public record and apply the established rules of construction, and in that way arrive at the true and consistent *scope of the patent owner's rights* to be given legal effect." *Id*. at 979 (emphasis added).

DM2\14406540.1

## IV.    AGREED CONSTRUCTIONS

| Term and Claims[4] | Agreed construction |
|---|---|
| **Base grid**<br>'628 Pat., Cl. **10**, **19**<br>'550 Pat., Cl. **8**<br>'317 Pat., Cl. **15** | a spatially represented collection of information such as a database or a map; *see, e.g.*, '628 Pat. at 11:10–13:34 (extensive discussion of base grid) |
| **Geocode**<br>'628 Pat., Cl. **13**<br>'550 Pat., Cl. **9** | identifier assigned to both a map feature and a data record containing attributes that describe the entity represented by the map feature; *see* '628 Pat. at 11:10–11:12. |
| **Icon**<br>'628 Pat., Cl. **10**, **19**<br>'550 Pat., Cl. **8**<br>'584 Pat., Cl. **12**, 14, 16<br>'317 Pat., Cl. **15**, 18, 19<br>'371 Pat., Cl. **1**<br>'333 Pat., Cl. **7** | graphical representation displayed on a screen corresponding to a computer function, object, operation, file, or group of files |
| **Location identifier**<br>'628 Pat., Cl. **10**, 13, 15, **19**<br>'550 Pat., Cl. **8**<br>'584 Pat., Cl. **12**, 13, 14<br>'317 Pat., Cl. **15**, 17<br>'371 Pat., Cl. 5<br>'333 Pat., Cl. 11 | indicator associated with a particular landmark; *see* '628 Pat. at 13:62–13:63. |
| **Menu**<br>'628 Pat., Cl. **10**, **19**<br>'550 Pat., Cl. **8**<br>'584 Pat., Cl. **12** | a set of selections or options, such as a list of icons |

As noted in Smarter Agent's Opening Brief, the parties agree to these constructions of "base grid," "geocode," "icon," "location identifier," and "menu." *See* Opening Br. at 2.

## V.    DISPUTED CONSTRUCTIONS

With the exception of one term—"dynamically updated," for which the parties dispute both the claim meaning and claim scope—the parties' disputes are ones of scope and not meaning. Smarter Agent mischaracterizes REW's position with respect to these disputed claim terms: REW is not, as Smarter Agent would have it, "attempt[ing] to impose restrictive limitations into the

---

[4] Independent claims in which a term appears are shown in **bold underline**, dependent claims in plain text.

asserted plain and ordinary meaning[s]." *See* Opening Br. at 3. Rather, REW is articulating the scope encompassed by the claim term so as to allow a lay jury to apply the skilled artisan's understanding of the terms, as *Markman* requires. 52 F.3d at 978.

**A.    The meaning and scope of "dynamically updated" is "updated to reflect changing weather conditions at a landmark."**

| Claims | P's Construction | D's Construction | Dispute |
|--------|------------------|------------------|---------|
| '628 Pat., Cl. 15 '317 Pat., Cl. **15** | Meaning: Plain and ordinary meaning, alternatively, "currently updated"  Scope: -- | Meaning: "updated to reflect changing weather conditions at a landmark"  Scope: "updated to reflect changing weather conditions at a landmark" | Meaning and scope dispute |

The parties dispute both the meaning and the scope of the claim term "dynamically updated." The word "dynamic" has a specific meaning to a skilled artisan in the context of the computer arts, and the patentees defined "dynamically updated" to mean something else.

A skilled artisan at the time of the invention would understand "dynamic," in the computing sense, to refer to a property of a database, program, or website: a database "that changes or that can be changed while a program or operating system is running," or a function "that can be performed at run time, rather than in advance." *See Oxford English Dictionary*, "Dynamic," Ex. 4 at REW0001402–03; *see also Oxford English Dictionary*, "Dynamic HTML," Ex. 4 at REW0001402 ("HTML enhanced by other web technologies (such as a scripting language like Javascript) used to enable a web page to support changing content or interactive capabilities in such a way that page changes are displayed automatically by the browser and do not need to be individually requested from the web server, DHTML."); *Vasudevan Software, Inc. v. Intl. Bus.*

*Machines Corp.*, No. C-09-05897, 2011 WL 196884, at *1, n. 2 (N.D. Cal. Jan. 20, 2011) ("dynamically" means "at run time in response to an ad hoc user query or request.").

The patentees did not use "dynamic" in its customary computing sense in the specification, however. Instead, the patentees specifically defined "dynamically updated information" to mean "information about current weather conditions."

> "These location-centric information data fields may be configured to be updated dynamically in real-time. Alternatively, they may contain predetermined static information. * * * The information stored in this type of a database may include both information that is static (*i.e.*, the historical information and information pertaining to the landmark), and **dynamically updated information** (*i.e.*, information about current weather conditions).").

*See* '628 Patent at 19:26–19:40 (emphasis added). The specification contrasts "dynamically updated information (*i.e.*, information about current weather conditions)" with "information that is static (*i.e.*, the historical information and information pertaining to the landmark)." This is the only passage in which the term appears, and the specification gives no other examples of other kinds of dynamically updated information.

"The usage '*i.e.*' ('*id est*' or 'that is'), signals an intent to define the word to which it refers." *TF3 Ltd. v. Tre Milano, LLC*, 894 F.3d 1366, 1372 (Fed. Cir. 2018) (citing *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1334 (Fed. Cir. 2009)). The use of "*i.e.*" is definitional when it "comports with the inventors' other uses . . . in the specification and with each and every other reference." *SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1202 (Fed. Cir. 2013); *see also Abbott Labs. v. Novopharm Ltd.*, 323 F.3d 1324, 1330 (Fed. Cir. 2003) (holding patentee "explicitly defined" term by using "*i.e.*" followed by explanatory phrase).

The lower court decisions that Smarter Agent relies upon to the contrary are not binding on this Court and are distinguishable. The *Keranos* court faulted the defendant for relying on an unpublished Federal Circuit table decision, whereas REW cites published, binding authority

directly on point. *Cf. Keranos, LLC v. Silicon Storage Tech., Inc.*, No. 2:13-CV-17, 2014 WL 47749, at *10 (E.D. Tex. Jan. 3, 2014). For its part, the *Otter Products* court declined to acknowledge any binding Federal Circuit authority that "*i.e.*" is definitional; moreover, the court noted that the patentee had described several types of interactive flat-panel controls of which the touch wheel, which appeared after the "*i.e.*" signal, was but one. *Otter Products, LLC v. Treefrog Developments Inc.*, No. 11-CV-02180, 2012 WL 4468211, at *27 (D. Colo. Sept. 27, 2012).

It is pure speculation by Smarter Agent to say that the drafter of the specification got confused and intended to use "*e.g.*" instead of "*i.e.*" *See* Opening Br. at 6. Had there been an error, the patentees could have corrected it. *See* 37 CFR § 1.221 (2019). Indeed, the patentees did correct the specification of at least the '795 Patent. *See* Opening Br., Ex. 2 at p. 10. Smarter Agent's reliance on *Dibble* is unavailing, not least because it is nonbinding authority from the Second Circuit rather than binding authority from the Federal Circuit, and because it concerned a New York Air National Guard staff sergeant's appeal of his denial of reenlistment rather than patent claim construction: even on the merits, the Second Circuit noted that despite the review board's use of "*i.e.*" to introduce a list of three pieces of evidence against the sergeant, the board "immediately [went] on to discuss evidence that was not mentioned in that list." *Dibble v. Fenimore*, 545 F.3d 208, 219 (2d Cir. 2008).

In contrast to *Keranos*, *Otter Products*, and *Dibble*, the only kind of "dynamically updated information" the Smarter Agent patentees cited in the relevant specifications was "information about current weather conditions." Smarter Agent is wrong that "may include" modifies the type of dynamically stored information. The relevant passage states that "[t]he information stored in this type of a database may include both information that is static (*i.e.*, the historical information and information pertaining to the landmark), and dynamically updated information (*i.e.*,

information about current weather conditions),” clearly delineating between two kinds of information, static and dynamic. *See* ’628 Patent at 19:28–19:29. But interpreting “dynamic” as merely “opposed to static,” as Smarter Agent suggests, *see* Opening Br. at 5, fails to inform a skilled artisan of the scope of the claims.

Because the patentees departed from the ordinary meaning of “dynamic” as a skilled artisan would understand it in the computing context, and have instead defined “dynamically updated information” both explicitly via the use of the signal “*i.e.*,” and implicitly by contrast with “static information,” the patentees acted as their own lexicographers.

It is important to construe this term for the jury because it is unclear whether the list price of a property, for example, falls within the scope of “dynamically updated” information as claimed. On one hand, it is possible to update the list price in a database in real time; on the other hand, a property’s price is “historical information” about a property as well as “information pertaining to the property, which the patentees defined as “information that is static.” The relevant specifications do not appear to contemplate that information can be both static and dynamic, so both the meaning and the scope must be made clear to the jury.[5]

For these reasons, “dynamically updated” should be construed as “updated to reflect changing weather conditions.”

---

[5] Smarter Agent agrees that “static” and “dynamic” are mutually exclusive categories of information. *See* Opening Br. at 5 (“[I]t is clear from the specification that ‘dynamically updated’ means nothing more than not ‘predetermined [and] static.’ Any information that is not ‘predetermined [and] static’ is ‘dynamically updated’ by implication.”)

### B.      The scope of "automatically" is "without user intervention."

| Claims | P's Construction | D's Construction | Dispute |
|---|---|---|---|
| '795 Pat., Cl. **1**, **19**, 22 '199 Pat., Cl. 5, **19**, 22 | Meaning: Plain and ordinary meaning  Scope: -- | Meaning: Plain and ordinary meaning  Scope: "without user intervention" | Scope dispute |

During the meet and confer, REW contended that neither the lexicography nor disclaimer exceptions apply to this term, and Smarter Agent did not take an explicit position; regardless, the parties are in apparent agreement that "automatically" should be given its ordinary meaning to a skilled artisan. REW contends that a skilled artisan would understand that "without user intervention" encompasses the scope of the term, whereas counsel for Smarter Agent stated during the parties' meet and confer that "without user intervention" is within the scope, but does not encompass the scope, of the term.[6]

Exemplary claim 1 of the '795 Patent recites, in pertinent part, the following:

> 1. A method, comprising:
>
> identifying a geographic position of a wireless device [and] * * *
>
> based on the identifying, **automatically** receiving location-centric information associated with the landmark from the database while the user is located at the geographic location.

The intrinsic record[7] supports REW's articulation of the scope of the term. Throughout the specification, the patentees draw distinctions between actions the user takes to receive information about a location and how that information can be provided to the user without user intervention.

---

[6] To the extent Smarter Agent intends to propose "essentially independent of external influence or control" as an appropriate articulation of the scope of "automatically," *see* Opening Br. at 8, REW agrees. Smarter Agent did not make this proposal at any time prior to filing its opening brief.

[7] The specifications of the '795 Patent and the '199 Patent are virtually identical, so citation is made only to the '795 Patent.

*See, e.g.*, '795 Pat. at 4:29–4:36 ("[I]nstead of just looking along the street on which the user is walking at what is visible, the system makes it possible for a user to obtain information about a particular property or business automatically when the user is located at that property or business."); 5:52–5:58 ("With the system, a user of a wireless device, such as a cell-phone or personal data assistant (PDA), can receive information from a database automatically as they, for example, they [*sic*] walk past a particular landmark or property. A user can also request information from the database[.] A user can also perform searches on the database."); 7:16–7:25 ("The data can be automatically transmitted from the database 26 to the device 20 based on the geographic position of the device 20. For example, when the device 20 (operated by a user) is located at a geographic position, such as when the user is standing by a landmark at the geographic position, data associated with the landmark can be automatically sent to the device 20. A user can also request information about a landmark at the geographic position for which the user is located by inputting a request into the device 20 at step 56.").

In addition to the intrinsic evidence, dictionary definitions support REW's articulation of the scope of the term "automatically." The *Oxford English Dictionary* defines "automatically" as "without active thought or volition; involuntarily; mechanically; unconsciously." *See* Ex. 4 at REW0001364. Likewise, *Webster's Third New International Dictionary* defines "automatically" as "in an automatic manner; without thought or conscious intention." *See* Ex. 5 at REW00001502. In the computing context, district courts have construed "automatically" consistent with REW's proposed construction. *See, e.g.*, *SRI Intern., Inc. v. Internet Sec. Sys., Inc.*, No. 04-1199, 2006 WL 2949305, at *2 (D. Del. Oct. 17, 2006) (construing "automatically receiving and integrating reports of suspicious activity" as "Without user intervention, receiving reports of suspicious activity and combining those reports into a different end product; *i.e.*, something more than simply collecting

DM2\14406540.1

and reiterating data."); *Absolute Software, Inc. v. Stealth Signal, Inc.*, No. H-05-1416, 2009 WL 2217536, at *1 (S.D. Tex. June 17, 2009), aff'd, 659 F.3d 1121 (Fed. Cir. 2011) (construing "automatically" as "acting or operating in a manner essentially independent of external influence or control; this action or operation may be triggered by some external event, but such a triggering event must not involve human intervention."); *Omax Corp. v. Flow Intern. Corp.*, No. C04-2334L, 2006 WL 3249190, at *7 (W.D. Wash. Nov. 7, 2006) (construing "automatically" as "performed without manual intervention.").

Smarter Agent is wrong that REW's articulation of the scope excludes a preferred embodiment. *See* Opening Br. at 7. On the contrary, "without user intervention" is perfectly consistent with how "automatically" is used in the specification: a user need only stand near a landmark, or walk past one, to have data associated with the landmark sent to her electronic device. *See, e.g.*, '628 Patent at 5:52–5:58, 7:16–7:25.

It is important to articulate the scope of this term so that the jury may accurately determine questions of infringement or invalidity. For example, a lay jury may erroneously believe that when a user runs a search from a location, the return of search results to the user is done "automatically," that is, instantaneously or without requiring the user to take additional steps such as manually specifying the user's location. A skilled artisan would understand that this is not done "automatically" because the user initiated the search; as that term is used in the specification, results are returned "automatically" when they are transmitted based on the user's presence at a location, without requiring the user to do anything more than be there.

For these reasons, "automatically" should be construed as "without user intervention."

C.   **The scope of "directly" is "from an initial origin to a final destination without passing through an intermediate location."**

| Claims | P's Construction | D's Construction | Dispute |
|---|---|---|---|
| '628 Pat., Cl. **10**, **19** '550 Pat., Cl. **8** | Meaning: Plain and ordinary meaning<br><br>Scope: -- | Meaning: Plain and ordinary meaning<br><br>Scope: "from an initial origin to a final destination without passing through an intermediate location" | Scope dispute |

During the meet and confer, REW contended that neither the lexicography nor disclaimer exceptions apply to this term, and Smarter Agent did not take an explicit position; regardless, the parties are in apparent agreement that "directly" should be given its ordinary meaning to a skilled artisan. REW contends that a skilled artisan would understand that "from an initial origin to a final destination without passing through an intermediate location" encompasses the scope of the term, whereas counsel for Smarter Agent stated during the parties' meet and confer that "from an initial origin to a final destination without passing through an intermediate location" is within the scope, but does not encompass the scope, of the term.

Exemplary Claim 10 of the '628 Patent recites, in pertinent part, the following:

> 10. A method, comprising:
>
> receiving a first menu of location-centric information associated with the property **directly** from the information system, the first menu having a plurality of selectable icons including an icon to search for a property for sale[.]

The intrinsic record supports REW's articulation of the scope of this claim term. "Directly" appears only in claims 1, 3, 10, 11 12, 19, 20, and 21 of the '628 Patent, and in claims 1 and 8 of the '550 Patent, and nowhere else in their respective specifications. During prosecution of the

13

'628 Patent, the patentees amended then-pending Claim 29 to distinguish a cited prior art reference, Rondeau, on the grounds that it did not teach receiving information "directly from the database":

> Claim 29 has been amended to recite "receiving an audio response *directly* from the database based on the selection." (emphasis added). None of the cited references, alone or in combination, suggest such a computer readable medium. Specifically, as stated in the October '07 Response, neither Wharton nor Kimoto disclose or suggest receiving an audio response of any kind. In addition, as described above, Rondeau discloses initiating a call between a computer and a separate telephone device. Thus, Rondeau does not disclose or suggest that computer 18 can receive an audio response directly from the database 14.

*See* Ex. 6 ('628 Patent File History, February 27, 2008 Office Action Response at p. 14–15) (emphasis and notation in original). The patentees characterized Rondeau as follows:

> Rondeau discloses an on-line directory service that includes a database 14 and a server center 12. The server center 12 can be coupled to a personal computer 18, the database 14 and a remote telephone device 22. A user of the directory service of Rondeau can select a telephone icon to place a telephone call to an entity (i.e., the telephone device 22). The server center 12 then initiates a call between the computer 18 and the telephone device 22.

*See* Ex. 6 ('628 Patent File History, February 27, 2008 Office Action Response at p. 12).

In a subsequent response to an office action rejection, the patentees canceled Claim 29 and most of the other then-pending claims, and introduced a new listing of the claims that would issue as the claims of the '628 Patent; claims 31, 32, 33, 57, 58, 59, 66, 67, and 68 included the "directly" limitation. *See* Ex. 6 ('628 Patent File History, August 28, 2008 Office Action Response at p. 2–7). Likewise, the original claims listing of the '550 Patent included claims 1, 20, and 29 that included the term "directly." *See* Ex. 7 at p. 37 ('550 Patent File History, Original Listing of Claims). The patentees' usage of "directly" in the prosecution history is consistent with REW's articulation of the scope of the term.

14

In addition to the intrinsic evidence, dictionary definitions support REW's articulation of the scope of the term "directly." The *Oxford English Dictionary* defines "directly" as "1. In a direct manner or way; a. in a straight line of motion; with undeviating course; straight; * * * 5. Without intervention of a medium or agent; immediately; by a direct process or mode." *See* Ex. 4 at REW0001395–96. *Webster's Third New International Dictionary* defines "directly" as "without any intervening agency or instrumentality or determining influence : without any intermediate step." *See* Ex. 5 at REW0001506. In the computing context, district courts have construed "directly" as REW proposes. *See, e.g.*, *Ampex Corp. v. Eastman Kodak Co.*, 460 F. Supp. 2d 541, 552 (D. Del. 2006) (construing "directly" to mean "the transfer of data without intervening processing.").

REW agrees that the Smarter Agent patents do not claim to have invented quantum tunneling or teleportation. *See* Opening Br. at 9. But some claim limitations require information to be received "directly" from an information system, whereas other claim limitations lack that requirement, and the difference has to mean something. *Compare* '628 Patent, Cl. 10 ("**receiving from** the information system a location identifier associated with a property at the geographic location") *with* '628 Patent, Cl. 10 ("**receiving** a first menu of location-centric information associated with the property **directly from** the information system"). "[W]hen an applicant uses different terms in a claim it is permissible to infer that he intended his choice of different terms to reflect a differentiation in the meaning of those terms." *See Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119–20 (Fed. Cir. 2004); *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373 (Fed. Cir. 2004); *Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1579 (Fed. Cir. 1996).

15

Smarter Agent is wrong that REW's articulation of the scope of "directly" would render the claims inoperable. *See* Opening Br. at 9–10. Science fiction flights of fancy aside, it is resolve the parties' dispute over claim scope so that a jury may correctly determine infringement and validity.

For these reasons, "directly" should be construed as "from an initial origin to a final destination without passing through an intermediate location."

### D.     The scope of "information system" is "a server."

| Claims | P's Construction | D's Construction | Dispute |
|---|---|---|---|
| '628 Pat., Cl. **10**<br>'550 Pat., Cl. **8**, 13, 14<br>'584 Pat., Cl. **12**, 13<br>'317 Pat., Cl. **15**, 17, 18<br>'371 Pat., Cl. **1**, 5<br>'333 Pat., Cl. **7**, 11 | Meaning: Plain and ordinary meaning, alternatively, "a system in which information is stored"<br><br>Scope: -- | Meaning: Plain and ordinary meaning<br><br>Scope: "a server" | Scope dispute |

During the meet and confer, REW contended that neither the lexicography nor disclaimer exceptions apply to this term, and Smarter Agent did not take an explicit position; regardless, the parties are in apparent agreement that that "information system" should be given its ordinary meaning to a skilled artisan. REW contends that a skilled artisan would understand that "a server" encompasses the scope of the term, whereas counsel for Smarter Agent stated during the parties' meet and confer that "a server" is within the scope, but does not encompass the scope, of the term. In the alternative, Smarter Agent proposed that this term has the meaning of "a system in which information is stored."

A skilled artisan at the time of the invention and after having read the specification and prosecution history would understand that, in the context of the claimed invention, an "information system" that provides remote access to, remote viewing of, and retrieval of information from a

database by a device networked to the information system describes a "server." The *Oxford English Dictionary* defines "server" as "a computer used to provide other computers with access to a resource, service, etc., over a computer network." *See* Ex. 4 at REW0001480. Technical dictionaries confirm this understanding. The *Microsoft Computer Dictionary* defines "server" as "[o]n the Internet or other network, a computer or program that responds to commands from a client. For example, a file server may contain an archive of data or program files; when a client submits a request for a file, the server transfers a copy of the file to the client." *See* Ex. 8 at REW0001527–28; *see also* REW0001526 ("client" and "client/server architecture"). Likewise, *Barron's Dictionary of Computer and Internet Terms* defines "server" as "a computer that provides services to another computer." *See* Ex. 9 at REW0001523; *see also* REW0001523 ("file server") and REW0001524 ("web server").

Exemplary Claim 10 of the '628 Patent recites, in pertinent part, the following:

> 10. A method, comprising:
>
> receiving a first menu of location-centric information associated with the property directly from the **information system**, the first menu having a plurality of selectable icons including an icon to search for a property for sale[.]

As used throughout the specifications[8], the information system is described as performing the same functions that a server performs. Figure 1, below, depicts information system 110 as a computer that, along with database 112, is connected via network 120 to wireless device 102 and computer 104 via a network 120, and is distinct from the wireless device and the computer. The "information system 110 [ ] includes a database 112," as a server would. *See, e.g.*, '628 Patent at 5:15–5:16.

---

[8] While not identical, the pertinent specifications use "information system" in the same way, so citation will be made only to the '628 Patent.

17



Figure 1

The information system allows users to "retrieve position-based location-centric information from location-centric information system 110 over a network 120 for use with devices [wireless device] 102, [computer] 104," as a server would. *Id*. at 5:20–5:23. Wireless device 102 and computer 104 can, via network 120, "access location-centric information system 110 to retrieve and view information from database 112," exactly as they would with a server. *Id*. at 6:54–6:61. And "location-centric information system 110 may store any combination of information regarding [many examples] in any number of databases 112," as a server would. *Id*. at 7:40–7:41.

Smarter Agent's alternative construction of "information system" as "a system in which information is stored" is circular and unhelpful to the jury. *See, e.g.*, *Serverside Group Ltd. v. Tactical 8 Techs., L.L.C.*, 927 F. Supp. 2d 623, 629, 659, 663 (N.D. Iowa 2013) (holding that plaintiff's proposed construction of "secure unique identifier" as "unique identifier which is

secure," and of "encrypted customer information" as "customer [or remote user] information which has been encrypted or encoded," is similar to explaining a "heart-attack-like-event" as "an event that is like a heart attack," à la Dr. Sheldon Cooper from the television sitcom *The Big Bang Theory*, and clears up nothing for the jury) (alteration in original). Smarter Agent's proposed construction therefore utterly fails to "resol[ve] disputed meanings and technical scope, to clarify and . . . explain what the patentee covered by the claims, for use in the determination of infringement.'" *O2 Micro Int'l*, 521 F.3d at 1362

It is important to articulate the scope of this term because "information system" is a nebulous concept that a jury might erroneously believe encompasses any number of components, in a manner far beyond what a skilled artisan would understand was disclosed in the Asserted Patents at the time of invention. A system is "any collection of component elements that work together to perform a task." *See* Ex. 8 at REW0001344. A lay jury may incorrectly understand that an "information system" is truly *any* collection of elements that work together to store information, including not just the computer that houses the database, but also phones, tablets, personal computers, apps, operating systems, or app stores that are connected to the database via a network. Each of these elements is capable of storing information, but none of these is within the scope of an "information system" as a skilled artisan would understand that term from the relevant specifications. A skilled artisan would understand that the patentees distinguished between the information system and the remote devices that are networked to it—this distinction must be made clear to the jury.

For these reasons, "information system" should be construed as "server."

### E.    The scope of "review" is "critical appraisal intended for the guidance of consumers."

| Claims | P's Construction | D's Construction | Dispute |
|---|---|---|---|
| '795 Pat., Cl. 22<br>'199 Pat., Cl. **19** | Meaning: Plain and ordinary meaning<br><br>Scope: -- | Meaning: Plain and ordinary meaning<br><br>Scope: "critical appraisal intended for the guidance of consumers" | Scope dispute |

During the meet and confer, REW contended that neither the lexicography nor disclaimer exceptions apply to this term, and Smarter Agent did not take an explicit position; regardless, the parties are in apparent agreement that "review" should be given its ordinary meaning to a skilled artisan. REW contends that a skilled artisan would understand that "critical appraisal intended for the guidance of consumers" encompasses the scope of the term, whereas counsel for Smarter Agent stated during the parties' meet and confer that this meaning is within the scope, but does not encompass the scope, of the term.

A skilled artisan at the time of the invention after having read the specification and prosecution history would understand that, in the context of the claimed invention, a "review" is a "critical appraisal intended for the guidance of consumers." The relevant specifications[9] support this articulation of the scope of the term, making clear that a "review" is something intended for the guidance of other people. The specification states that, "[f]or example, a person may want to provide a review of a restaurant or store so that others can be better informed when they visit that business." '795 Patent at 2:54–2:56. The specification goes on to describe how a user can leave a review of a yard sale for subsequent users:

---

[9] The specifications of the '795 Patent and the '199 Patent are virtually identical, so citation is made only to the '795 Patent.

> A user can go to a yard sale and input a "review" of the yard sale such as, 'This sale has tons of great CD's.' That information, which is input while the user is at the yard sale, is uploaded based on the geographic position of the user. Accordingly, the information/review is associated with that particular location. When a subsequent user retrieves the classified ad about the yard sale, the user can also be provided with the review of the yard sale. The review/additional information can either be provided automatically or selectively based on user preference. For example, a user may be given the option of retrieving reviews. The scenario described above can also be associated with a restaurant, retail outlet, museum, house, etc.

'795 Patent at 5:27–5:39. A skilled artisan would therefore understand that a "review" is a critical appraisal that is intended for the guidance of other consumers. Extrinsic evidence also supports this articulation of the scope of the term. The *Oxford English Dictionary* defines "review" as "a critical appraisal of a product, service, etc., intended for the guidance of consumers." *See* Ex. 4 at REW0001459. Similarly, *Webster's Third New International Dictionary* defines "review" as "an explanatory and critical account of an artistic production or performance (as a book, play, exhibition, or concert) usu. in a periodical." *See* Ex. 5 at REW0001517.

As is clear from the specification and the dictionary definitions, a review is a statement that reflects the reviewer's subjective judgement of something, and that the reviewer intends to be used for the guidance of other people. Smarter Agent's examples, *see* Opening Br. at 13, find no explicit support in the relevant specifications. The number of restrooms at a landmark or the selection of items at a gift shop is "information;" a "review" is one type of information.

It is important to articulate the scope of this term because a skilled artisan would understand that a review is different from a bookmark (often indicated in a browser or app with an icon shaped like a physical bookmark) or favorite (often indicated in a browser or app with a icon shaped like a heart or a single star). Unlike a review, bookmarks and favorites are private to the user and are not intended for the guidance of the public, and do not necessarily reflect a user's critical appraisal

of the thing being bookmarked or favorited. Reviews, by contrast, are public-facing and can take the form of user comments or a range of ratings (*e.g.*, one to five stars) that express the user's judgment of the thing being reviewed.

For these reasons, "review" should be construed as "critical appraisal intended for the guidance of consumers."

### F.   The relative time term "substantially simultaneously" is indefinite.

| Claims | P's Construction | D's Construction | Dispute |
|---|---|---|---|
| '795 Pat., Cl. 22<br>'199 Pat., Cl. **19** | Meaning: Plain and ordinary meaning<br><br>Scope: -- | Meaning: Plain and ordinary meaning<br><br>Scope: Indefinite | Scope dispute |

During the meet and confer, REW contended that neither the lexicography nor disclaimer exceptions apply to this term, and Smarter Agent did not take an explicit position; regardless, the parties are in apparent agreement that "substantially simultaneously" should be given its ordinary meaning to a skilled artisan. REW contends, however, that a skilled artisan would not be able to understand the scope of this term because the relevant specifications provide no way for a skilled artisan to determine how close in time two events must occur for them to happen "substantially simultaneously" in the context of the Asserted Patents.

"[A] patent must be precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 909 (2014) (cleaned up). Accordingly, "[t]he Patent Act requires that a patent specification 'conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as [the] invention.'" *Id.* at 901 (second alteration in original) (quoting 35 U.S.C. § 112, para. 2). Patent claims are indefinite if they "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Id.*

Claim 22 of the '795 Patent recites the following:

> 22. The method of claim 19, wherein the data input by a user is automatically associated with the geographic position **substantially simultaneously** with the data being input by the user.

Claim 19 of the '199 Patent recites, in pertinent part, the following:

> 19. A method comprising: * * *
>
> automatically associating the data with the geographic position **substantially simultaneously** with the transmitted data being uploaded to the database.

The relevant specifications do not use the term "substantially simultaneously" except for in the claims, making it more likely to be indefinite. *See, e.g.*, *KLA-Tencor Corp. v. Xitronix Corp.*, No. A–08–CA–723, 2011 WL 318123, at *3–5 (W.D. Tex. Jan. 31, 2011) ("substantially maximize the strength of the output signals" is indefinite; "substantially" did not appear in the specification except in two claims, and there was "no standard for determining what is substantially maximizing in the patent itself"); *Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*, 382 F. Supp. 3d 586, 606 (E.D. Tex. 2019) (claim term that was present only in patent background was found indefinite); *Vstream Technologies, LLC v. PLR Holdings, LLC*, No. 6:15-cv-974, 2016 WL 6211550, at *6–8 (E.D. Tex. Sept. 27, 2016), *report and recommendation adopted*, 2016 WL 6159624 (E.D. Tex. Oct. 24, 2016) (claim term that was present only in abstract was found indefinite); *C & C Jewelry MFG., Inc. v. West*, No. 09-1303, 2010 WL 2681921, at *5–6 (N.D. Cal. July 6, 2010) (claim term mentioned only once in the specification and in a different context than in the claim was found indefinite). Nor do the relevant specifications provide any objective way for a skilled artisan to understand when two events occur substantially simultaneously.

The prosecution history is similarly unenlightening: while the patentees did amend the claims of the '795 Patent to include the "substantially simultaneously" limitation to distinguish over the prior art, they did not provide any objective way for a skilled artisan to understand when

23

two events are happening close enough in time that they occur "substantially simultaneously." *See* Ex. 10, '795 Patent File History, November 25, 2008, Office Action Response at p. 8–9.

It is not so, as Smarter Agent argues, *see* Opening Br. at 15, that REW is arguing that "the word 'substantially' alone renders the term indefinite." Rather, "substantially simultaneously" is indefinite in the context of these claims and this intrinsic evidence because it does not provide a skilled artisan objective boundaries of what is claimed. *See Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) ("The claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art.").

*Fractus* is not to the contrary: there, the court observed that the use of "substantially" may be appropriate "when warranted by the nature of the invention" to "accommodate [] minor variations," and emphasized that the scope of the claimed subject matter must "be understood by persons in the field of the invention." *Fractus, S.A. v. AT&T Mobility LLC*, No. 2:18-CV-00135, 2019 WL 1641357, at *28 (E.D. Tex. Apr. 16, 2019). Each of the cases relied upon by the *Fractus* court concerned mechanical or chemical inventions that, by their nature, require the accommodation of minor variations and whose scope can be objectively determined.[10] Notably, in *Anchor Wall Sys.*, also relied upon by the *Fractus* court, the Federal Circuit held that the district court erred when it failed to construe the meaning and scope of the only disputed term,

---

[10] *See, e.g.*, *Verve, LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1120 (Fed. Cir. 2002) ("substantially constant wall thickness" of improved push rods in an internal combustion engine*); Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1983) (spacer block in a shipping bundle of pipe "of a height substantially equal to or greater than the thickness of the tier of pipe length"); *Deere & Co. v. Bush Hog*, LLC, 703 F.3d 1349, 1360 (Fed. Cir. 2012) ("upwardly facing deck surface which is smooth and substantially obstruction free"); *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1367 (Fed. Cir. 2001) ("a three-dimensional, solid, cast, hydrated, substantially uniform alkaline detergent"); *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332-36 (Fed. Cir. 2010) (functional limitation; nucleotide detection probe with "linkage group not interfering substantially with detection of [a nucleotide]"); *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1205–06 (Fed. Cir. 2017) (quick-fill water balloons with elastic fasteners "configured to provide a connecting force that is not less than a weight of one of the containers when substantially filled with water"); *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1344–47 (Fed. Cir. 2018) ("lawn mower deck with a "a first elongated and substantially straight baffle portion").

"substantially horizontal." *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1311 (Fed. Cir. 2003) ("In order to review the court's finding of noninfringement, we must know what meaning *and scope* the district court gave to the asserted claims.") (emphasis added).

The other cases Smarter Agent cites are distinguishable as well. With minimal analysis, the *Alifax* court considered only the meaning of the term "substantially simultaneously," without taking the necessary next step of determining its scope. *Compare Alifax Holding SpA v. Alcor Sci. Inc.*, No. 14-440, 2017 WL 1533430, at *10 (D.R.I. Apr. 27, 2017) *with O2 Micro*, 521 F.3d at 1361 (a claim term should be construed when the parties dispute "not the meaning of the words themselves, but the *scope* that should be encompassed by th[e] claim language") (emphasis in original). Likewise, the *Transcenic* court performed no substantive analysis of whether the term was definite; instead, the court cited its practice of forbidding "summary judgment arguments, including indefiniteness arguments, during the claim construction phase of the litigation." *Transcenic, Inc. v. Google Inc.*, 7 F. Supp. 3d 405, 419 (D. Del. 2013) (*citing Personalized User Model LLP v. Google, Inc.*, No. 09–525, 2012 WL 295048, at *22 (D. Del. Jan. 25, 2012)).

*Synvasive* predated the Federal Circuit's *O2 Micro* decision; the patented technology was a bone saw with a multiplicity of different teeth that contacted the bone "substantially simultaneously." *Synvasive Corp. v. Stryker Corp.*, 478 F. Supp. 2d 1193, 1199 (E.D. Cal. 2007). Given the physical dimensions of bones and the toothed blade, a skilled artisan can objectively determine whether the teeth contact the bone substantially simultaneously. *See id*. In contrast, the claims asserted by Smarter Agent do not permit such an objective determination.

Because the asserted patents "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention" with regard to the term "substantially simultaneously," the term is indefinite. *Nautilus*, 572 U.S. at 909.

G.     The relative location terms "being at," "different," "located at," "outside,"
       "proximate to," and "remote from" are indefinite.

| Term and Claims | P's Construction | D's Construction | Dispute |
|---|---|---|---|
| **Being at**<br>'584 Pat., Cl. **12**<br>'317 Pat., Cl. **15** | Meaning: Plain and ordinary meaning<br><br>Scope: -- | Meaning: Plain and ordinary meaning<br><br>Scope: Indefinite | Scope dispute |
| **Different**<br>'550 Pat., Cl. 13, 14<br>'584 Pat., Cl. 13<br>'317 Pat., Cl. **15**, 17 | Meaning: Plain and ordinary meaning<br><br>Scope:-- | Meaning: Plain and ordinary meaning<br><br>Scope: Indefinite | Scope dispute |
| **Located at**<br>'550 Pat., Cl. 13, 14<br>'584 Pat., Cl. 13<br>'317 Pat., Cl. 17<br>'795 Pat., Cl. **1**, 7, **19**<br>'199 Pat., Cl. **1**, 5, 7,<br>**19**, 22 | Meaning: Plain and ordinary meaning<br><br>Scope: -- | Meaning: Plain and ordinary meaning<br><br>Scope: Indefinite | Scope dispute |
| **Outside**<br>'371 Pat., Cl. 4<br>'333 Pat., Cl. 10 | Meaning: Plain and ordinary meaning, alternatively, "in the immediate vicinity of, but not inside"<br><br>Scope: -- | Meaning: Plain and ordinary meaning<br><br>Scope: Indefinite | Scope dispute |
| **Proximate to**<br>'584 Pat., Cl. **12**<br>'317 Pat., Cl. **15**<br>'371 Pat., Cl. **1**<br>'333 Pat., Cl. **7** | Meaning: Plain and ordinary meaning, alternatively, "in the immediate vicinity of"<br><br>Scope: -- | Meaning: Plain and ordinary meaning<br><br>Scope: Indefinite | Scope dispute |
| **Remote from**<br>'584 Pat., Cl. **12**<br>'317 Pat., Cl. **15**<br>'371 Pat., Cl. **1**<br>'333 Pat., Cl. **7** | Meaning: Plain and ordinary meaning, alternatively, "not in the immediate vicinity of"<br><br>Scope: -- | Meaning: Plain and ordinary meaning<br><br>Scope: Indefinite | Scope dispute |

Here, there is no dispute between the parties about what the relative location terms—"being

at," "different," "located at," "outside," "proximate to," and "remote from"—mean. REW also

26

does not dispute Smarter Agent's alternate proposed meanings for "outside" ("in the immediate vicinity of, but not inside"), "proximate to" ("in the immediate vicinity of"), or "remote from" ("not in the immediate vicinity of").

These terms of degree are nevertheless indefinite because they "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 572 U.S. at 909; *see Halliburton Energy Servs., Inc. v. M–I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008) (Even if a term is defined, "the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope."). "When a word of degree is used the district court must determine whether the patent's specification provides some standard for measuring that degree." *Seattle Box*, 731 F.2d at 826 (claims not indefinite because specification provided such a standard).

Exemplary claim 1 of the '795 Patent recites, in pertinent part, the following:

> 1. A method, comprising: * * *
>
> receiving data input by a user while the user is **located at** the geographic position of the wireless device, the data being associated with a landmark at the geographic position * * * .

Exemplary claim 15 of the '317 Patent recites, in pertinent part, the following:

> 15. A method, comprising:
>
> providing from a mobile electronic device to an information system information related to a geographic location associated with a position of the mobile electronic device, the information system **being at** a geographic location **remote from** the geographic location of the mobile electronic device * * *
>
> receiving at the mobile electronic device from the information system a plurality of location identifiers, each location identifier from the plurality of the location identifiers including a unique street address of a property for sale located **proximate to** the geographic location of the mobile electronic device * * * .

Exemplary claim 13 of the '550 Patent recites the following:

> 13. The method of claim 8, wherein the information system is located at a geographic position **different** from the geographic position of the electronic device.

Exemplary claim 4 of the '371 Patent recites the following:

> 4. The method of claim 1, wherein the geographic position is **outside** said landmark for sale.

The specifications provide no objective way for a skilled artisan to determine, for example, how far away the information system must be from the electronic device to be considered "remote from" it; how close the mobile electronic device must be to a property to be considered "proximate to" it; what it means for a user to "be[] at" a place or be "located at" a place; what it means for one position to be "different" from another; and where an electronic device must be located relative to a property to be considered "outside" of it.

These are purportedly location-based patents, and yet they fail to inform a skilled artisan with reasonable certainty what it means to be at, near, or far away from a location. *See Nautilus*, 572 U.S. at 909; *see also, e.g., Arthrex, Inc. v. Smith & Nephew, Inc*, No. 2:15-cv-1047, 2016 WL 4211504, at *42 (E.D. Tex. Aug. 10, 2016) ("most distal end of the implant" was indefinite); *Skyhook Wireless, Inc. v. Google, Inc.*, No. 10–11571, 2014 WL 898595, at *5–6 (D. Mass. Mar. 6, 2014) ("far" as used in the claims was indefinite); *cf. Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1291–1294 (Fed. Cir. 2017) ("near" not indefinite when extensively discussed in specification).

One can imagine a host of ways the boundaries of the invention could have been communicated to a skilled artisan with reasonable certainty: for example, the relevant specifications could have made clear that an electronic device is considered "being at" or "located at" a place if the device is at the identical geocoded location as the place, or at the identical latitude

28

and longitude as the place, or within the property boundary of a place identified by a street address and/or unit number; that an electronic device is "proximate to" a property when it has the same geocode as a property or is within a specified distance of the property; that an electronic device is "remote from" an information system when they are more than a specified distance away from each other, or are located at different street addresses, or have different geocodes; that two positions are "different" from one another when they have non-identical geocodes, non-identical street addresses, or are a certain distance away from each other; and that a position is "outside" a property when it is outdoors and within a specified physical distance of the property, or is outside the property line of a property, or has a non-identical geocode as the property.

But the relevant specifications fail to provide any objective measure for these relative location terms. As a result, a skilled artisan cannot know whether foreseeable user actions are infringing or not. For example, despite the descriptions in the specification, *e.g.*, at '628 Patent at 14:61–14:67, an artisan cannot objectively determine whether an electronic device held by a user on a public sidewalk that abuts a private property is considered to be "located at" or "being at" that property, is considered to be at a "different" location or "remote from" from any information system located at that property, is considered to be "proximate to" that property, or is considered to be "outside" that property. The same goes for when the user and the device are at an address next door to the property, or are in a different unit in the same building as the property, or are in a car on the same street as the property, or are on a sidewalk across the street from the property.

In these situations, any number of skilled artisans may draw any number of conclusions about whether the user's device and the property are at the same location as ("located at" or "being at"), near ("proximate to" or "outside"), or far away from ("different" or "remote from") each other. Smarter Agent's alternative articulations of the scope of these terms do not help: "in the

immediate vicinity of," "in the immediate vicinity of, but not inside," and "not in the immediate vicinity of" convey no objective understanding of the scope of the claim terms.

The cited passages that Smarter Agent relies upon convey only a subjective understanding of the terms. *See* Opening Br. at 18. Whereas Smarter Agent contends that a user "in front of '103 Oak Street'" is "located at" and "being at" that address, a skilled artisan may reasonably disagree because the user is near the address ("on a street") but not within its property boundary. Similarly, a skilled artisan has no way to know whether, to be considered "outside" the property, a user must be away from the property boundary itself, or away from the property boundary plus some undefined part of the street so that the user is no longer "located at" or "being at" the property. *See id*. In addition, if the information system is located in the building at 103 Oak Street, the specification does not inform a skilled artisan whether the user in the street is "remote from" it, "proximate to" it, or at a "different" location than it. *See id*.

The relative location terms are therefore indefinite because they fail to provide any objective boundaries of the claimed invention, and because the claim language could reasonably convey a different scope to different artisans. *Interval Licensing*, 766 F.3d at 1371; *Nautilus*, 572 U.S. at 911 & n. 8 (potential indefiniteness problem if claim language "might mean several different things and 'no informed and confident choice is available among the contending definitions'").

## VI.   CONCLUSION

There is an actual dispute over the scope of these claim terms. For the reasons stated above, the Court should construe "dynamically updated," "automatically," "directly," "information system," and "review" as proposed by REW. Likewise, the Court should hold that "substantially simultaneously," "being at," "different," "located at," "outside," "proximate to," and "remote from" are indefinite.

Dated:  July 16, 2021

Respectfully submitted,

*/s/ W. Andrew Liddell*

Gilbert A. Greene
  State Bar No. 24045976
W. Andrew Liddell
  State Bar No. 24070145
DUANE MORRIS LLP
Las Cimas IV
900 S. Capital of Texas Highway,
Suite 300
Austin, TX 78746-5435
Tel: (512) 277-2300
Fax: (512) 277-2301
BGreene@duanemorris.com
WALiddell@duanemorris.com

*Attorneys for Defendants Real Estate
Webmasters, Inc.*

31

## **CERTIFICATE OF SERVICE**

I certify that on July 16, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ W. Andrew Liddell*
W. Andrew Liddell

DM2\14406540.1