# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| SMARTER AGENT, LLC,<br><br>             Plaintiff,<br>v.<br><br>REAL ESTATE WEBMASTERS, INC.,<br><br>             Defendant. | Civil Action No.: 6:19-cv-00182-ADA<br><br>JUDGE ALBRIGHT<br><br>**Jury Trial Demanded** |

---

## PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF

---

## Table of Contents

Table of Authorities ........................................................................................................... ii

I.      BACKGROUND ......................................................................................................1

II.     ARGUMENT ...........................................................................................................2

        A.      "Dynamically Updated" ...............................................................................2

        B.      "Automatically" ...........................................................................................6

        C.      "Directly" .....................................................................................................8

        D.      "Information System" ................................................................................10

        E.      "Review" ....................................................................................................12

        F.      "Substantially Simultaneously" ................................................................13

        G.      Relative Location Terms ...........................................................................15

III.    CONCLUSION......................................................................................................17

## Table of Authorities

**Cases**

*Absolute Software, Inc. v. Stealth Signal, Inc.*,
No. H-05-1416, 2009 WL 2217536 (S.D. Tex. June 17, 2009) ................................................. 6

*Ampex Corp. v. Eastman Kodak Co.*,
460 F. Supp. 2d 552 (D. Del. 2006) ....................................................................................... 9

*Ancora Techs., Inc. v. Apple, Inc.*,
744 F.3d 732 (Fed. Cir. 2014) ............................................................................................ 15

*Dibble v. Fenimore*,
545 F.3d 208 (2d Cir. 2008) ................................................................................................. 4

*Dyfan, L.L.C. v. Target Corp.*,
No. W-19-CV-00179-ADA, 2020 WL 8617821 (W.D. Tex. Nov. 24, 2020) .................. 3, 9, 13

*Freescale Semiconductor, Inc. v. Promos Techs., Inc.*,
561 F. Supp. 2d 732 (E.D. Tex. 2008) .................................................................................. 10

*Keranos, LLC v. Silicon Storage Tech., Inc.*,
Nos. 2:13-cv-17, 2:13-cv-18, 2014 WL 47749 (E.D. Tex. Jan. 3, 2014) .................................. 4

*KLA-Tencor Corp. v. Xitronix Corp.*,
No. A-08-CA-723, 2011 WL 318123 (W.D. Tex. Jan. 31, 2011) ............................................ 14

*Omax Corp. v. Flow Intern. Corp.*,
No. C04-2334L, 2006 WL 3249190 (W.D. Wash. Nov. 7, 2006) ............................................. 7

*Otter Prods., L.L.C. v. Treefrog Devs. Inc.*,
No. 11-cv-02180-WJM-KMT, 2012 WL 4468211 (D. Colo. Sept. 27, 2012) ........................... 4

*Sandisk Corp. v. Memorex Prods.*,
415 F.3d 1278 (Fed. Cir. 2005) ......................................................................................... 7, 8

*SkinMedica, Inc. v. Histogen Inc.*,
727 F.3d 1187 (Fed. Cir. 2013) ............................................................................................ 3

*SRI Intern., Inc. v. Internet Sec. Sys., Inc.*,
No. 04-1199, 2006 WL 2949305 (D. Del. Oct. 17, 2006) ....................................................... 6

*TF3 Ltd. v. Tre Milano, LLC*,
894 F.3d 1366 (Fed. Cir. 2018) ............................................................................................ 3

*Thorner v. Sony Comput. Ent. Am. L.L.C.*,
   669 F.3d 1362 (Fed. Cir. 2012) ............................................................................................ 3, 9

Defendant Real Estate Webmasters Inc. ("REW")'s Opening Claim Construction Brief confirms what Plaintiff Smarter Agent, Inc. ("SA") indicated in its Opening Claim Construction Brief: REW seeks to narrowly construe terms that require no construction, asserts that lexicography has occurred without even attempting to meet the exacting standard to do so, and has no basis to assert that any term would be indefinite to one of ordinary skill in the art.  The Court should adopt SA's claim construction positions.

REW's introductory remarks denying that the inventors of the SA Patents invented anything are inappropriate for a claim construction brief.  Any substantive invalidity arguments REW raises during the validity phase of the case will be addressed at that time.  REW is also off-base in arguing that a person of ordinary skill in the art ("POSITA") could not understand the location-based technology described in and claimed by the SA Patents.  Rather, the asserted Patents  are crystal clear to a person of ordinary skill in the art.  The claimed concepts are not so foreign to one of ordinary skill in the art as to render the Patents indefinite.  And while REW obliquely references other SA Patents that have been the subject of *inter partes* reexamination proceedings, REW fails to mention that for most of the Patents in this case, the prior art from those proceedings was before and considered by the United States Patent and Trademark Office prior to issuance.

The SA Patents are valid and enforceable, their claims are clearly delineated, and the Court should reject REW's effort to escape infringement through creative, but improper, claim construction and indefiniteness arguments.

## I.    BACKGROUND

REW applies an overly formalistic and largely nonexistent distinction between the "meaning" and "scope" of a claim term, and seemingly faults SA for failing to do so.  But the scope of a claim term flows from its meaning, and REW repeatedly undercuts its own arguments by

admitting that SA's understanding of the "meaning" is correct for nearly all of the disputed claim terms. Despite these admissions, SA persists in advancing artificial, limited constructions (*e.g.* by improperly importing specification examples and details into the claims) or by making baseless indefiniteness arguments that would only confuse a jury at trial and vitiate the claim construction process.

In any case, SA properly met and conferred concerning every disputed claim term, resulting in agreement on many initially disputed terms. For the remaining terms, SA's position is largely that no construction is necessary because no lexicography, disclaimer or disavowal has attached to the terms, and the plain and ordinary meaning of the term is clear without formal construction. REW's apparent demand that SA rigidly define the scope of each term is legally unsupported and improper. Neither SA nor the inventors could possibly envision every possible technical implementation that would meet the claims of the SA Patents, nor are they legally required to do so. The jury, armed with the meaning of the claim terms and a fully developed factual record, will make the ultimate determination as to whether REW's accused products and services fall within the claims of the SA Patents.

## II.    ARGUMENT

### A.    "Dynamically Updated"

| SA's Proposed Construction | REW's Proposed Construction |
|---|---|
| Plain and ordinary meaning.<br><br>Alternatively, "currently updated" | "updated to reflect changing weather conditions at a landmark" |

As explained in SA's Opening Brief, "[t]o act as his/her own lexicographer, the patentee must 'clearly set forth a definition of the disputed claim term,' and 'clearly express an intent to define the term.'" *Dyfan, L.L.C. v. Target Corp.*, No. W-19-CV-00179-ADA, 2020 WL 8617821,

at *2 (W.D. Tex. Nov. 24, 2020) (quoting *Thorner v. Sony Comput. Ent. Am. L.L.C.*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)).  REW does not even mention this exacting standard, let alone make an effort to meet the standard.

REW acknowledges that the term "dynamic" had a well-understood meaning at the time of the invention of the SA Patents, and that the meaning bears no resemblance to "updated to reflect changing weather conditions at a landmark."  D.I. 46 at 6 ("A skilled artisan at the time of the invention would understand 'dynamic,' in the computing sense, to refer to a property of a database, program, or website: a database 'that changes or that can be changed while a program or operating system is running,' or a function 'that can be performed at run time, rather than in advance.'").  Rather than leave the inquiry there as the law requires, REW, as anticipated by SA, seeks to transform a single, contextually ambiguous use of the abbreviation "*i.e.*" into an act of formal lexicography.  But SA extensively explained in its Opening Brief why this argument is unavailing, and the cases on which REW relies do not support its argument.

In *TF3 Ltd. v. Tre Milano, LLC*, 894 F.3d 1366, 1372 (Fed. Cir. 2018), the court was construing the phrase "[t]he length of hair can pass through the secondary opening," a term that, unlike "dynamically," has no established meaning outside the context of the specification in which it appears.  The Federal Circuit held that the phrase was defined by the use of "*i.e.*" because there was no other way to construe it.[1]  In *SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1199 (Fed. Cir. 2013), the use of "*i.e.*" in context was "The cells are cultured in monolayer, beads (i.e., two-dimensions) or, preferably, in three-dimensions."  The dispute was whether culturing in beads could include culturing in three-dimensions, which was expressly contrasted against "two-

---

[1] Similarly, in *Abbott Labs. v. Novopharm Ltd.*, 323 F.3d 1324, 1330 (Fed. Cir. 2003), the term allegedly defined by "*i.e.*," "co-micronization," "was not known in the art prior to the filing date of the application that led to" the patent at issue.

3

dimensions" associated with the "beads" term.  The court held that "i.e." limited "beads" to "two-dimensions" because to do otherwise would vitiate the distinction in the specification.  *Id.* at 1202.  But that is not the case here, where giving "dynamically" its plain and ordinary meaning would not encompass what "dynamically" is contrasted against in the specification, *i.e.* static information.  Importantly, the result in *TF3* would have been the same if the court had interpreted "i.e." as indicating an example rather than a definition.  Since culturing in beads was an example of culturing in two dimensions, it could not also be an example of culturing in three dimensions.  *TF3* has no applicability here.

Meanwhile, REW has little with which to respond to the cases relied upon by SA, other than to assert that they are "not binding."  D.I. 46 at 7.  While this may be true as a formal matter, the cases SA cited demonstrate that courts should hesitate to rigidly apply the "*i.e.*" signal to find lexicography where none exists.  Indeed, REW has nothing at all to say regarding the reasoning underlying the highly analogous case of *Keranos, LLC v. Silicon Storage Tech., Inc.*, Nos. 2:13-cv-17, 2:13-cv-18, 2014 WL 47749, at *10 (E.D. Tex. Jan. 3, 2014), a case in which the court rejected precisely the argument that REW is advancing here.  Further, contrary to REW's argument, *Otter Prods., L.L.C. v. Treefrog Devs. Inc.*, No. 11-cv-02180-WJM-KMT, 2012 WL 4468211, at *22 (D. Colo. Sept. 27, 2012), in which the court held that  the use of "i.e." in a prosecution document did not amount to a definitional statement concerning the term in question, is informative here, as it indicates that the use of "i.e." by itself is not sufficient to narrowly define a term that is otherwise given its plain and ordinary meaning.

Likewise, REW has no answer to the Second Circuit's observation in *Dibble v. Fenimore*, 545 F.3d 208, 219 (2d Cir. 2008), that "[a]n unfortunate fact of modern American linguistic practice is that many Americans confuse 'i.e.' and 'e.g.'" and holding that the use of "i.e." in place

of "e.g." in the case at bar was "merely a slip." D.I. 46 at 8.  While it is true that REW could have amended the specification to correct what appears to be a minor error, there was no need to do so, as a reasonable reading of the "i.e." phrase in question falls far short of the legal requirements for lexicography.

REW is thus incorrect that "the only kind of 'dynamically updated information' the Smarter Agent patentees cited in the relevant specifications was 'information about current weather conditions.'" D.I. 46 at 8.  As explained in SA's Opening Brief, the full context of the discussion in which "dynamically updated information" appears makes clear that "updated to reflect changing weather conditions at a landmark" is only one example of such information, and the full breadth of the term includes any non-static information.  REW simply ignores this context, which defeats any assertion that the patentee intended to limit the term as REW suggests.

The purported ambiguity REW asserts requires that this term be construed is a red herring. D.I. 46 at 9.  The "list price of a property" could obviously be dynamically updated under the plain meaning of that term, and limiting the term to weather information is entirely unjustified.  Indeed, the specification explicitly differentiates "sale price" and "historical data" as separate types of information in one embodiment, confirming that "sale price" need not be "historical" and can instead be "dynamically updated." *See, e.g.*, '628 Patent at 15:50.  The '628 Patent also indicates that "historical sale prices" may be made available, again distinguishing from dynamically updated sale prices. *Id.* at 15:54-57.

The Court should reject REW's proposed narrowing construction and afford "dynamically updated" its plain and ordinary meaning.

5

### B. "Automatically"

| SA's Proposed Construction | REW's Proposed Construction |
|---|---|
| Plain and ordinary meaning. | plain and ordinary meaning, i.e., "without user intervention" |

REW's Opening Brief acknowledges that some user action is associated with operations performed "automatically" in the SA Patents. Consistent with the examples cited in SA's Opening Brief, REW relies on specification quotations in which an "automatic" process is triggered by an action of a user, specifically approaching or being located at a particular location. D.I. 46 at 11. That concession confirms that REW's proposed "without user intervention" limitation is too restrictive—**each automatic process in the specification is in fact triggered by a user**. The parties are thus in agreement that *some* user conduct could be associated with an automatic operation, meaning "automatically" cannot always mean "without user intervention."

REW's extrinsic evidence sheds no further light on the correct construction. First, REW cites a construction that includes the words "active thought," "volition," involuntarily," and "unconsciously," words that are all intrinsically *human* in nature and have no applicability to the technical components at issue in the SA Patent claims. D.I. 46 at 11. The next definition is circular ("in an automatic manner"), also invoking human characteristics ("without thought or conscious intention"). *Id.*

REW's case law fares no better. The term at issue in *SRI Intern., Inc. v. Internet Sec. Sys., Inc.*, No. 04-1199, 2006 WL 2949305, at *2 (D. Del. Oct. 17, 2006), was "automatically receiving and integrating reports of suspicious activity," a term that has no resemblance to the use of "automatically" in the SA Patents. The court's construction in that case therefore has no relevance here. In *Absolute Software, Inc. v. Stealth Signal, Inc.*, No. H-05-1416, 2009 WL 2217536, at *1 (S.D. Tex. June 17, 2009), the court held that the term "automatically" was limited to an "operation

[that] may be triggered by some external event, but such a triggering event must not involve human intervention."   But as discussed above, the SA Patents explicitly contemplate human actions triggering automatic processes.  This case, too, is therefore irrelevant.  Finally, in *Omax Corp. v. Flow Intern. Corp.*, No. C04-2334L, 2006 WL 3249190, at *7 (W.D. Wash. Nov. 7, 2006), the court construed "automatically" as "performed without manual intervention" because the parties agreed that "this is how someone of ordinary skill in the art would interpret this term."

After citing inapposite dictionary definitions and case law, REW contradicts itself by asserting that "without user intervention" is consistent with a user standing near a landmark or walking past one.  D.I. 46 at 12.  But both of these actions are plainly user interventions, and REW fails to explain how they are not.  Put simply, without a user, the automatic operations described in the specification could not happen.

Finally, REW's hypotheticals have no bearing on the proper construction of "automatically."  D.I. 46 at 12.  As discussed above and in SA's Opening Brief, a variety of user actions are associated with "automatic" operations in the SA Patents.  The specifics of whether any particular operation is performed "automatically" in relation to an accused user action will depend on the full context of the accused process and the claim language.  REW offers no reason for the Court to adopt a restrictive construction that contradicts the preferred embodiments.  *Sandisk Corp. v. Memorex Prods.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005) ("A claim construction that excludes a preferred embodiment, moreover, is rarely, if ever correct.").

The Court should reject REW's proposed construction of "automatically" and afford the term its plain and ordinary meaning.

### C.    "Directly"

| SA's Proposed Construction | REW's Proposed Construction |
|---|---|
| Plain and ordinary meaning. | plain and ordinary meaning, i.e., "from an initial origin to a final destination without passing through an intermediate location" |

SA explained in its Opening Brief why REW's proposed construction of "directly" is not only incorrect, but unworkable—it defies physics to require information to travel from an origin to a destination without passing through the space in between.  REW largely ignores this problem in an effort to advance its position.

REW's reliance on irrelevant excerpts from the prosecution history is not helpful.  D.I. 46 at 13-14.  As explained in SA's Opening Brief, the specifications of the '550 and '628 Patents make clear that the information system (110) directly communicates with the user devices (102 and 104) via some communication infrastructure, which would entail intermediate locations.  D.I. 42 at 9-10.  REW's proposed construction barring intermediate locations would thus improperly exclude the preferred embodiment.  *Sandisk*, 415 F.3d at 1285.  Further, the only explicit discussion of "directly" during prosecution of these Patents in relation to issued claims was to state that "receiving real estate information about a particular property from a transmitter located at the property" was not receiving information "directly from a database situated remotely from the property."  D.I. 42 at 11.  REW's brief does not even acknowledge these arguments, let alone attempt to refute them or explain how they could possibly support its position.

Instead, REW devotes a page of its brief to irrelevant passages from the '628 Patent File History concerning cancelled claims, concluding "[t]he patentee's usage of 'directly' in the prosecution history is consistent with REW's articulation of the scope of the term."  D.I. 46 at 14.  Not only is this statement a non sequitur—REW offers no explanation as to how the discussion of

a cancelled claim is "consistent with" REW's strained interpretation of "directly—but it is irrelevant even if true. Constraining a claim term due to statements in the prosecution history requires "'a clear disavowal of claim scope.'" *Dyfan, LLC*, 2020 WL 8617821, at *2 (quoting *Thorner*, 669 F.3d at 1365). Mere "consistency" with a proposed limitation on claim scope is not enough.

REW's dictionary definitions—which are unnecessary in light of clear guidance from the intrinsic record—are also of no help, as none of REW's quoted definitions is the same as "from an initial origin to a final destination without passing through an intermediate location." Likewise, the construction of "directly" in *Ampex Corp. v. Eastman Kodak Co.*, 460 F. Supp. 2d 541, 552 (D. Del. 2006), "the transfer of data without intervening processing," is different from REW's proposed construction, which refers to an "intermediate location" rather than "intervening processing."

SA agrees that the use of the word "directly" "has to mean something." D.I. 46 at 15. But REW offers no support for its proposed meaning, and a person of ordinary skill in the art would understand the meaning of "directly" without formal construction.

Finally, REW fails to explain how information can travel between an origin and a destination without traversing a location between the two points, and thus has not refuted SA's showing that REW's proposed construction would render the claim term inoperable. D.I. 46 at 16.

The Court should reject REW's proposed construction of "directly" and afford the term its plain and ordinary meaning.

### D.    "Information System"

| SA's Proposed Construction | REW's Proposed Construction |
|---|---|
| Plain and ordinary meaning.<br><br>Alternatively, "a system in which information is stored" | "server" |

REW's discussion of "server" confirms that there is no value in formally construing this term, and that the term should be afforded its plain and ordinary meaning.  At best, REW's discussion of "server" confirms that an "information system" in the SA Patents is simply "a system in which information is stored."

REW asserts that an "information system" is coterminous with "server," but then offers broad definitions of "server" that render its construction unhelpful.  First, REW cites a definition of "server" as "a computer used to provide other computers with access to a resource, service, etc., over a computer network."  D.I. 46 at 17.  But this leaves open what the meanings of "computer" and "computer network" are, and apparently seeks to limit a claimed "system" to a discrete, individual "computer."  There is no basis for such a restriction and the jury would not be helped by the added confusion.

Similarly, the definition "[o]n the Internet or other network, a computer or program that responds to commands from a client" (D.I. 46 at 17) is no less open-ended than "a system in which information is stored."  The "Internet or other network" could be any electronic network, and "a computer or program" could be any type of electronic system.  Further, a computer or program that "responds to commands from a client" does not necessarily store "information," and thus this definition would improperly read out one of the aspects of the claim term itself.  *See, e.g.*, *Freescale Semiconductor, Inc. v. Promos Techs., Inc.*, 561 F. Supp. 2d 732, 750 (E.D. Tex. 2008) (holding that a construction that vitiates claim language is improper).  Finally, "a computer that

provides services to another computer" (D.I. 46 at 17) is circular, as it is unclear what "services" are envisioned by this definition.

REW then makes unsupported and conclusory statements attempting to liken the "information system" as described in the specifications to a "server." D.I. 46 at 17. But while SA agrees in general that "the information system is described as performing the same functions that a server performs" (*id.*), and thus a "server" can be a *type* of or a *component* of an "information system," the specification never *limits* "information system" to only a "server." Rather, the information system is described as a system that stores information, and as is well known, such systems could take a variety of forms.

Nor is SA's proposed alternative construction "circular." D.I. 46 at 18. SA's proposed alternative construction emphasizes that the information system *stores* information for retrieval by another system component, which is the only required system aspect apparent from the intrinsic evidence. In any case, the Court can avoid any concerns over circularity by simply affording the term its plain and ordinary meaning as proposed by SA.

REW's intent to unduly limit the term "information system" is laid bare in its brief. As REW acknowledges, "[a] system is 'any collection of component elements that work together to perform a task.'" D.I. 46 at 19. REW is concerned that a jury may apply this (correct) definition of "system" and conclude that "an 'information system' is truly *any* collection of elements that work together to store information, including not just the computer that houses the database, but also phones, tablets, personal computers, apps, operating systems, or app stores that are connected to the database via a network." *Id.* (emphasis in original). REW's concerns are overblown, as components operating as "mobile devices" within the claims would be distinct from "information systems" by operation of the claim language itself. But apart from that, the patentee used the word

"system," not "server," and SA is entitled to the full scope of that term absent a clear disclaimer, disavowal or lexicography.  REW has identified no valid reason to depart from the agreed upon plain and ordinary meaning of "information system," and the Court should not do so.  Rather, the Court should reject REW's construction of "information system" and afford the term its plain and ordinary meaning.

### E.    "Review"

| SA's Proposed Construction | REW's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning. | plain and ordinary meaning, i.e., "critical appraisal intended for the guidance of consumers" |

SA explained in its Opening Brief why REW's proposed construction of "review" is problematic.  The SA Patents do not limit a "review" to a "critical appraisal," nor should SA be required to examine the intent of a reviewer to prove infringement.  REW's Opening Brief fails to refute these facts.

First, REW correctly notes that, according to the specification, "'a person may want to provide a review of a restaurant or store so that the others can be better *informed* when they visit that business.'"  D.I. 46 at 20 (quoting '795 Patent at 2:54–2:56) (emphasis added).  But this passage confirms that a review need only provide *information* rather than a "critical appraisal" or "guidance."

Nonetheless, REW attempts to rely on a lengthy block quote from the specification, which does not use the words "critical," "appraisal," "intended," or "guidance," to support its proposed construction.  D.I. 46 at 21.  But nothing in the passage, which is primarily concerned with the manner in which a review can be retrieved by a subsequent user, rather than the nature of the review itself, has any connection to REW's strained construction.  For this reason, REW attempts

to rely on extrinsic evidence.  *Id.*  But given the clear, unrestricted usage of "review" in the specification, there is no need to resort to extrinsic evidence.  *Dyfan*, 2020 WL 8617821, at *1 ("Although extrinsic evidence can also be useful, it is less significant than the intrinsic record in determining the legally operative meaning of claim language.") (internal quotations omitted).

The specification makes clear that a review need only convey information, not a "subjective judgement of something" as REW asserts.  D.I. 46 at 21.  REW can point to nothing constituting a "review" in the specification that requires a critical appraisal, and thus there is no basis to limit the term as REW proposes.

The Court should reject REW's proposed construction of "review," affording the term its plain and ordinary meaning.

### F.    "Substantially Simultaneously"

| SA's Proposed Construction | REW's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning. | indefinite |

As explained in SA's Opening Brief, the term "substantially simultaneously" is composed of two terms—"substantially" and "simultaneously"—that are each readily discernible by one of ordinary skill in the art who read the intrinsic record of the SA Patents.  Together, they form an easily accessible phrase conveying that two events must occur largely at the same time, but not exactly at the same time.  Further, the word "substantially" is routinely used in patent claims and typically found by courts *not* to be indefinite.

REW's indefiniteness argument as to this term is entirely conclusory.  REW does not contend that the lack of explicit recitation of a claim term in the specification renders that claim term indefinite *per se* (and that is not the law), and the only case that REW cites on this topic that actually used the word "substantially" is readily distinguishable.  In *KLA-Tencor Corp. v. Xitronix*

*Corp.*, No. A-08-CA-723, 2011 WL 318123, at *3-5 (W.D. Tex. Jan. 31, 2011), the term at issue was "substantially maximize."  The word being modified by "substantially," "maximize," was necessarily open-ended, and thus the Court held that there was no way to determine what "substantially maximize" meant without explicit guidance from the specification.  Here, the modified word is "simultaneous," which has a clear meaning: at the same time.  A person of ordinary skill in the art would understand what "substantially simultaneously" means, *i.e.* not necessarily exactly at the same time, but largely at the same time.  Further, in light of the clear objective meaning of "substantially simultaneously," there was no need to further elucidate the meaning during prosecution.  The Examiner allowed the claims without comment on "substantially simultaneously."

REW's attempt to distinguish *Fractus*, which acknowledged the appropriateness of "substantially" in patent claims, is unavailing.  The SA Patents are in the field of network communications and computer processing.  Because information travels between locations at finite speeds, and because computer operations are processed with inherent delays, the word "substantially" is appropriate to "accommodate [] minor variations" (D.I. 46 at 24) rather than requiring different events to occur at precisely the same instant in time.  There is nothing special about "mechanical or chemical inventions" that require acknowledgment of the limits of physical systems in a manner that electronic inventions do not.  D.I. 46 at 24.  Regarding the additional cases SA cited in its Opening Brief, REW has no answer other than to criticize the authors of those decisions.  *Id.* at 25.  The fact remains that "substantially" is a standard and well-accepted patent drafting term, and courts routinely reject arguments that phrases containing that word are indefinite.

Finally, REW's attempt to escape *Synvasive* is entirely conclusory.  REW declares, without analysis, that "[g]iven the physical dimensions of bones and the toothed blade, a skilled artisan can objectively determine whether the teeth contact the bone substantially simultaneously."  D.I. 46 at 25.  But REW offers no explanation as to why the same would not be true of network communications and computer processing, given a skilled artisan's understanding of the nature and limits of such systems.

REW has not shown that the term "substantially simultaneously" is indefinite, the Court should reject REW's arguments and afford the term its plain and ordinary meaning.

### G.   Relative Location Terms

REW admits that "there is no dispute between the parties about what the relative location terms—'being at,' 'different,' 'located at,' 'outside,' 'proximate to,' and 'remote from'—mean."  D.I. 46 at 26.  That should end the inquiry, as claim terms cannot be indefinite where the parties agree as to their meanings.  *Ancora Techs., Inc. v. Apple, Inc.*, 744 F.3d 732, 737 (Fed. Cir. 2014) (rejecting an indefiniteness argument because "there is no dispute that the terms . . . have a meaning that is clear, settled, and objective in content.").  Indeed, REW goes so far as to admit that SA's proposed alternative constructions for "outside," "proximate to," and "remote from" are proper, further precluding a finding of indefiniteness.  D.I. 46 at 27.  Nonetheless, REW puzzlingly proceeds to argue that these terms are somehow indefinite. [2]

At the outset, the terms at issue are not "terms of degree" as asserted by REW.  D.I. 46 at 27.  Rather, they are *descriptive* terms relating to location in the real estate context.  REW's reliance on case law concerning terms of degree is therefore inapposite.

---

[2] REW's indefiniteness position as to "located at" is also inconsistent with REW's agreement to the construction of "location identifier."  D.I. 46 at 5.

REW's cases purporting to deal with location-based terms are also unhelpful.  Tellingly, REW cites no cases dealing with the specific terms at issue here.  This is not surprising, as the terms at issue are readily comprehensible and thus require no construction.  Instead, REW cites cases dealing with true terms of degree such as "most," "far" and "near," and even cites a case in which the latter term was found *not* indefinite.  D.I. 46 at 28.  Consistent with that case law, the term "proximate to" is no less definite than "near," which the reviewing court found to be definite, and the remaining terms simply identify locations with respect to other locations in conventional ways.  None of the challenged location terms are indefinite based on the authority REW cites.

REW then employs hindsight to imagine ways in which the drafter of the SA Patents could have elucidated the terms at issue to REW's satisfaction.  But REW cites no legal authority for the proposition that a claim term is indefinite if there are hypothetical ways in which the term could have been more fully described in the specification.  That is simply not the legal requirement for indefiniteness—all that is required is that a person of ordinary skill in the art would have understood the meaning of the terms at issue, and that is plainly the case here.  Similarly, REW cites no authority or evidence for its imagined confusion on the part of a skilled artisan concerning the plain terms at issue.

Next, REW raises a purported concern that "any number of skilled artisans may draw any number of conclusions about whether the user's device and the property are at the same location as ('located at' or 'being at'), near ('proximate to' or 'outside'), or far away from ('different' or 'remote from') each other."  D.I. 46 at 29.  No doubt the parties' experts will do just that when disputing whether REW infringes the SA Patents, but these anticipated *factual* disputes do not render the terms indefinite.  In any case, REW contorts the meanings of these terms to create confusion where none exists.  REW has cited no authority showing that "located at" or "being at" are difficult to

understand.  While "proximate to" and "outside" may be comparable to "near," the case REW cites concerning the term "near" found the term *not* to be indefinite.  And "different" and "remote from" are not coterminous with "far away from"; they are simply opposed to "located at" and "being at."  A person of ordinary skill in the art, and the jury, can readily understand these familiar English language phrases.

Finally, REW makes very little effort to refute the examples from the specification that SA identified illustrating the scope of the disputed claim terms.  REW has ignored the context of the claim terms and improperly attempted to reduce the terms to their narrowest possible limitation to create ambiguity where none exists.  A skilled artisan would understand the example concerning 103 Oak Street, as explained in detail in SA's Opening Brief, and REW's feigned confusion does not change that conclusion.

REW affords a person of ordinary skill in the art very little credit in declaring that such skilled artisan would not be able to comprehend the concept of devices being at different locations.  This is all the more true in light of the fact that REW *admits* that the *meanings* of each of these terms are crystal clear.  The Court should reject REW's poorly taken effort to invalidate the claims through faulty indefiniteness arguments.

## III.   CONCLUSION

SA respectfully requests that the Court adopt its claim construction positions.

Dated:  July 26, 2021                    Respectfully submitted,

                                         By: */s/ Matthew C. Holohan*
                                             Jeffrey G. Toler
                                             Texas Bar No. 24011201
                                             jtoler@tlgiplaw.com
                                             TOLER LAW GROUP, PC
                                             4709 Snake Eagle Cove
                                             Bee Cave, TX 87838
                                             Telephone: 512-925-8779

                                             Michael C. Smith
                                             State Bar No. 18650410
                                             Michael.smith@solidcounsel.com
                                             Scheef & Stone, LLP
                                             113 E. Austin Street
                                             Marshall, TX 75671
                                             Telephone: 903-838-8900
                                             Facsimile:  972-767-4620

                                             Robert R. Brunelli (Admitted *pro hac vice*)
                                             rbrunelli@sheridanross.com
                                             Matthew C. Holohan (Admitted *pro hac vice*)
                                             mholohan@sheridanross.com
                                             SHERIDAN ROSS P.C.
                                             1560 Broadway, Suite 1200
                                             Denver, CO 80202
                                             Telephone:  303-863-9700
                                             Facsimile   303-863-0223
                                             litigation@sheridanross.com

                                         *Attorneys for Plaintiff Smarter Agent, LLC*

18

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 26, 2021, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(b).


By: *<u>/s/ Matthew C. Holohan</u>*
    Matthew C. Holohan