1              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TEXAS
2                        WACO DIVISION

3  SMARTER AGENT, LLC            *
                                 *      August 27, 2021
4  VS.                           *
                                 * CIVIL ACTION NO. W-19-CV-182
5  REAL ESTATE WEBMASTERS, INC.  *

6          BEFORE THE HONORABLE ALAN D ALBRIGHT
                 MOTION HEARING (via Zoom)
7
   APPEARANCES:
8
   For the Plaintiff:        Robert R. Brunelli, Esq.
9                            Matthew C. Holohan, Esq.
                             Sheridan Ross P C.
10                           1560 Broadway, Suite 1200
                             Denver, CO 80202
11
                             Michael Charles Smith, Esq.
12                           Siebman, Forrest, Burg & Smith, LLP
                             113 E. Austin Street
13                           Marshall, TX 75670

14 For the Defendant:        Gilbert Andrew Greene, Esq.
                             William Andrew Liddell, Esq.
15                           Duane Morris LLP
                             900 S. Capital of Texas Hwy, Suite 300
16                           Austin, TX 78746

17 Court Reporter:           Kristie M. Davis, CRR, RMR
                             PO Box 20994
18                           Waco, Texas 76702-0994
                             (254) 340-6114
19

20      Proceedings recorded by mechanical stenography, transcript

21 produced by computer-aided transcription.

22

23

24

25

1          (August 27, 2021, 9:31 a.m.)

2          DEPUTY CLERK:  Motion hearing in Civil Action W-19-CV-182,

3     styled Smarter Agent, LLC versus Real Estate Webmasters,

4     Incorporated.

5          THE COURT:  Announcements from plaintiff's counsel first,

6     please.

7          MR. SMITH:  Yes, Your Honor.  For the plaintiffs, Michael

8     Smith, Rob Brunelli and Matt Holohan.  Mr. Holohan will be

9     presenting for us, and we're ready to proceed.

10          THE COURT:  Very good.

11          MR. GREENE:  Good morning, Your Honor.  Bert Greene from

12     Duane Morris on behalf of defendant.  With me is my colleague

13     Andy Liddell here in Austin.  We are ready to proceed, and

14     Mr. Liddell will be handling the argument for our side today.

15     It's his first time to argue in front of you, and I know he's

16     very excited about it.

17          THE COURT:  Well, I'm glad it won't be you.  I've gotten

18     to spend too much time with you this week, and I look forward

19     to hearing from someone else.  So -- and I look forward to

20     hearing from Mr. Liddell, obviously.

21          So give me just one second to pull up the motion.  Jun

22     sent it to me, so let me just get squared away here.

23          Okay.  Very good.  I'm happy to hear argument in favor of

24     the motion.

25          MR. LIDDELL:  Thank you, Your Honor.  I'm going to go

1   ahead and share my screen.

2       Okay.  Are you able to see that, Your Honor?

3       THE COURT:  I am.  Yes, sir.

4       MR. LIDDELL:  In that case, may it please the Court.

5       All asserted claims in this case are ineligible under

6   Alice.  Each of the 44 asserted claims from the eight asserted

7   patents is broadly directed to the abstract idea of informing a

8   user about nearby property for sale.  The claims do not propose

9   a technical solution to a technical problem.

10       The purported inventions do not, for example, make a

11  computer network run faster or improve the operations of a

12  mobile device.  Instead, as stated repeatedly in the complaint

13  and by plaintiff's expert, the claims make the process for

14  searching for a home more efficient by taking steps that used

15  to be done by humans and doing them with a computer.

16       But this is not enough to confer eligibility under Alice.

17  The claims do not recite significantly more than an abstract

18  idea.  And the complaint is not plausibly and specifically

19  identifying what the inventive concept is.

20       Just as initial matters worth noting, that none of the

21  asserted claims was examined under Alice.  Five patents issued

22  before Alice, three received statutory double patenting

23  rejections that were allowed after a terminal disclaimer,

24  which, as the Court knows, means that the issue claims were

25  patentably indistinct from the earlier claims.

4

1          And in the case of the '317 patent which plaintiff points

2     out in its brief, the 101 rejection was not actually directed

3     to the asserted claims.  This was not an Alice rejection.  And,

4     you know, Alice appears nowhere in this rejection, and the

5     patentee cancelled the claims in response.  So there's no

6     indication that the Patent Office ever applied Alice to any of

7     the claims that have been asserted here.  And to the extent

8     they did, they got it wrong.

9          Now, before we turn to the claims, it's important to point

10    out that the specification discloses the claim elements in only

11    the most generic fashion.  Every component in the claim that

12    may perform one of the claimed functions is described as being

13    known in the art.  The inventors did not describe themselves as

14    improving any aspect of the communications hardware or network

15    infrastructure.

16         So at a high level the specification describes the

17    components of the system in very generic terms, including

18    wireless devices, computers and an information system.

19         The patentee goes on to give a generic listing of the

20    electronic devices, including wireless telephones and PDAs as

21    well as "various other portable electronic communications

22    devices capable of carrying out similar activities."

23         And this is an admission by the patentee that electronic

24    devices were so well-known in the art that it's assumed that a

25    skilled artisan knows what they can do and that by listing off

1  a few generic examples, the artisan would know what other

2  devices are "capable of carrying out similar activities."

3       And where the device is a PDA, the patentees say that they

4  may use conventional methods to provide input.  And this,

5  again, is an admission by the patentee that menus and icons are

6  not inventive, and that an artisan would know what conventional

7  methods are used to provide input to a PDA.

8       It's -- you know, you hop in the time machine, but the

9  PalmPilot debuted in 1997, which was years before the earliest

10  priority date of these patents.  By then, as the specification

11  makes clear, everybody knew about icons and menus on portable

12  computers.

13       The specification goes on to state that the location could

14  be pinpointed via known means, so just by using a GPS locator

15  or a cellular telephone network.

16       The operating systems are, likewise, generic and

17  conventional.  Windows Palm and Unix were known conventional

18  GUI, or graphical user interface, based operating systems that

19  used menus and icons.

20       The user interface itself is described generically.  It

21  enables a user to carry out "various activities," and the use

22  of "et cetera" in this sentence confirms these are generic

23  activities.  If there's anything special or particular or

24  inventive about them, one would expect the patentees to

25  describe them in more detail and not just list a few cursory

1   examples and conclude with an "et cetera."

2       Patentees state that the network can be "any form of

3   interconnecting network."  It doesn't get more generic than

4   that.

5       And finally, as the patentee has recapped their purported

6   invention, there's a lot of generic language here.  And, Your

7   Honor, I'm not sure if you're a Seinfeld fan or if you caught

8   the last end of court meeting with an actually pretty good

9   Seinfeld-themed CLE, but the patentees basically just "yadda,

10  yadda, yadda" their way through the aspects of the invention

11  that Smarter Agent now asserts are inventive concepts.

12      If these were inventive concepts, one would expect the

13  patentees to spend more time discussing in the specification

14  and not, as they do here, talk about these elements in cursory

15  terms, such as "some device" or a "cell phone, PDA, et cetera"

16  or "some way to transmit information."

17      The patentees didn't invent the devices and they didn't

18  invent a way to locate the device and they didn't invent a way

19  for the device to talk to the information system.  And if they

20  didn't invent a way for -- an operating system or a user

21  interface, then what did they invent?

22      Nothing.  The patentees purportedly invented a way to make

23  the process of searching for a home more efficient by using

24  then-existing mobile computing technology, but that is not

25  patent eligible.

1       The claims recite only generic devices and user interface

2  elements.  There is nothing specific or new or different about

3  the icons and menus that are recited in the asserted claims.

4       Now, I understand that this Court, like many other

5  district courts across the country, has expressed reservations

6  that the analytical approach required by Alice can be difficult

7  to apply.

8       That may be true in some cases, but not in this case.

9  This is a clear-cut case of the claims being directed to an

10  abstract idea.  And as the Court of course is aware, the

11  Federal Circuit has articulated the first Alice prong in

12  different ways.

13       In one framing, the Federal Circuit says that if a claim

14  is directed to functional results, basically a list of gerunds

15  or i-n-g words, converting, routing, controlling, monitoring,

16  accumulating, but does not describe how to achieve those

17  results in a nonabstract way, the claim is not patent eligible.

18       And that's the Two-Way Media case in 2017.

19       In other opinions, the Federal Circuit frames the analysis

20  somewhat more pithily.  And in those cases, the Federal Circuit

21  says, if a claim takes an existing practice and merely adds the

22  requirement to do it on a computer, that's not enough to confer

23  eligibility.

24       So now I'd like to take the Court through these two ways

25  of looking at the asserted claims.

8

1      This is Claim 10 of the '628 patent, which is
2 representative for purposes of our briefing, and Smarter Agent
3 did not dispute in its briefing that this claim was
4 representative.
5      And here, as you can see, the claims are directed to the
6 functional results of "providing," "receiving" and
7 "transmitting."
8      And these claims do not describe how to obtain those
9 results in a nonabstract way.  The claims claim the functional
10 results that are lots and lots of i-n-g words here, but that's
11 all they do.
12      Now, moving on to the other way of looking at Alice Step
13 1, I'd like to illustrate how these are do-it-on-a-computer
14 claims by going back in time a little bit to technology that
15 existed nearly 50 years ago, long before mobile computing and
16 the Internet ever arose.
17      So imagine now it's 1955 (sic).  There's a new girl in the
18 big city, and I'm probably imagining the opening credits of
19 Mary Tyler Moore here.  And imagine that our buyer is visiting
20 a new neighborhood, she falls in love with it and she sees
21 herself living here.
22      She's so excited she runs to the nearest pay phone and she
23 calls her friend, a realtor.  And the realtor has access to a
24 phonebook, a key map and a multiple listing service book in
25 which new home listings appear.  And for the purposes of this

1   demonstration, the realtor and her books are the information

2   system and the phone booth is the electronic device.

3       Now, the buyer doesn't know quite where she is, but she

4   can see a hotel from the phone booth, so she tells the realtor

5   the name of the hotel.  And in doing so, she's providing the

6   information system with information related to the geographic

7   location.

8       The realtor consults the phonebook and tells the buyer her

9   current street address.  And in doing so, the buyer receives a

10  location identifier.  The realtor also consults her map and MLS

11  book and gives the buyer the street addresses of a number of

12  condos, duplexes, apartments and single-family homes that are

13  near the buyer.

14      And the buyer in response tells the realtor that she's

15  only interested in the condo.  The realtor then comes back to

16  the buyer with the street addresses of several one-, two- and

17  three-bedroom condos near the phone booth.  And this is where

18  the buyer receives a second menu of information.

19      And the buyer comes back to realtor and says, you know,

20  I'm only interested in a one-bedroom condo.  And that completes

21  the conversation and completes Claim 10 of the '628 patent.

22      Now, you replace the realtor, the books and map with a

23  server.  You replace the phone booth with a mobile phone.  And

24  you communicate via the Internet using existing graphical user

25  interface elements, and you have the asserted claims.

1          Is it more efficient to do this with a computer?  It may

2     well be, but increasing speed or efficiency in the process or

3     entity that is using the computer, that is, making the

4     house-hunting process less burdensome or saving the user time,

5     that is not enough to confer eligibility.  And that's the

6     Ericsson case from just last year in 2020.

7          And this is not an instance where the network is being

8     made more efficient.  Any assertion that Smarter Agent makes in

9     its briefs or by its expert these claims are somehow directed

10    to improving a network is belied by the specification itself,

11    which states that everything needed to perform these claim

12    methods was known in the art and was previously designed to

13    work together.

14         Electronic devices, the network, the information system or

15    server, location-finding techniques, all of that already

16    existed.

17         And notably in its briefing, Smarter Agent does not cite

18    any passage from the specification in support of its position

19    that these claims are directed to improving a network.

20    Conclusory assertions, by it or by its expert, are not enough

21    to withstand a motion for judgment on the pleadings.

22         And whether you look at these as "do it on a computer

23    claims" under University of Florida Research Foundation or as

24    claimed in the result claims under Two-Way Media, these claims

25    are directed to an abstract idea under Alice Step 1.

1    So now we move on to Alice Step 2, which, as the Court

2  knows, states an abstract idea may, nonetheless, be patentable

3  if it recites an inventive concept.  But here, no additional

4  elements beyond the abstract idea are disclosed.

5    The claims do not use these components in an

6  unconventional way.  It's right there in the specification that

7  all the steps are performed using known means.  There is simply

8  no inventive concept here.

9    And just as only generic elements were disclosed in the

10  specification that we addressed at the top of this

11  presentation, only generic elements are being claimed.

12    So once again, we're looking at Claim 10 of the '628

13  patent as representative, and only generic elements are claimed

14  here.  We have a generic information system, generic electronic

15  device, generic location identifier, generic menu and icons,

16  and generic data.

17    There's no inventive concept or unconventional arrangement

18  of known elements that's present in these claims.  And because

19  these claims are directed to an abstract idea under Alice Step

20  1 and because they don't recite an inventive concept under

21  Alice Step 2, they're directed to an ineligible subject matter

22  under 35 USC 101.

23    Now, before I conclude, I'd like to address a couple other

24  points raised in Smarter Agent's briefing.

25    First, Smarter Agent claims that claim construction's

1   necessary to resolve this motion but has not said how or why

2   that is the case.  And as the Court is aware, we had planned to

3   have a Markman hearing today, and we wish Dr. Yi a speedy

4   recovery and we're very sorry he's not able to join us today.

5       The Smarter Agent has been fully aware of our claim

6   construction position for two months now, well in advance of

7   the briefing on this motion.

8       And moreover, Smarter Agent has argued that no

9   construction's necessary for any of the terms that we proposed

10  and that plain and ordinary meaning of each of the disputed

11  terms should apply.

12      It's inconsistent, at best, for Smarter Agent to argue on

13  the one hand that plain and ordinary meaning is enough for a

14  lay jury to determine factual issues, validity and

15  infringement, while on the other hand arguing that plain and

16  ordinary meaning is not enough for this Court, which is very

17  experienced in patent litigation, to determine the legal issues

18  of subject-matter eligibility.

19      Similarly, Smarter Agent has not explained why discovery

20  is necessary.  Any assertions that the claims include an

21  inventive concept or are directed to an improvement and how a

22  communication networks functions or recite the use of known

23  components in an unconventional way are contradicted by the

24  specification itself.

25      The specification clearly states that the invention is

1   meant to improve the user experience, and it describes and

2   identifies a number of problems with brick-and-mortar house

3   hunting, including that location-specific or time-sensitive

4   information was too hard to obtain, that people have a hard

5   time finding the right features in their house search, that

6   relying on a broker cedes too much control from the buyer, and

7   that the house-search experience is just too random.

8       These are people problems.  These are not computer or

9   network problems.  And these admissions in the patent render

10  any discovery unnecessary.  There are no facts that will be

11  uncovered in discovery that can contradict what is plainly

12  written on the face of the patent.

13      The problem was that house hunting was inconvenient for a

14  user and the solution was to do it on a computer with existing

15  mobile computers and existing network elements.

16      Finally, the Court should deny Smarter Agent leave to

17  amend.  Even if its expert opinion was incorporated wholesale

18  into a brand new amended complaint, that complaint would still

19  fail to state a claim.  Like the statements the patentees made

20  in the specification, Dr. Garlick's assertions that the

21  invention represented an improvement focus on the user

22  experience.

23      Dr. Garlick sates that prior systems required the user to

24  be located at a fixed computer, that the purported invention

25  allows a user standing near a house for sale to immediately

1    access information about the house.  And he goes on.  Whereas

2    previously existing methods led buyers being shown properties

3    that, you know, they would reject on sight and just weren't in

4    them, and that obtaining information was cumbersome and

5    unreliable.  The purported invention leads to fewer rejected

6    properties and makes obtaining information less cumbersome and

7    more reliable.

8         The complaint still fails Alice Step 1, because again,

9    these are people problems and people solutions and have nothing

10   to do with the underlying technology.

11        And, likewise, Dr. Garlick's conclusory assertion that the

12   patents somehow integrate technological components is

13   contradicted by the specification which discloses that all of

14   these components were well-known and were designed to work

15   together.  The conclusory allegations in Dr. Garlick's

16   declaration are simply not sufficiently possible and specific

17   to change the fact that the asserted claims are ineligible

18   under Alice.

19        And under the Federal Circuit's very recent Yu versus

20   Apple decision, this Court need not accept as true allegations

21   that contradict the specification.  As we just discussed, the

22   allegations in the original complaint and any allegations that

23   appear in Dr. Garlick's declaration, if the claims are

24   unconventional or add an inventive concept, contradict the many

25   statements in the specification that all the patentees were

1  trying to do was make it easier to find a house using existing

2  technology.

3       I'll just conclude in the words of the Federal Circuit

4  which put it well in Move versus Real Estate Alliance.  Claims

5  like the ones that are asserted here that broadly recite the

6  commercial practice of using a computer for locating available

7  real estate properties, those claims fail Alice Step 1.  And

8  while the idea of informing a user about nearby properties for

9  sale with a mobile computer might be an improvement, as a

10  similar idea was in Move, that is not a technological

11  improvement.

12       Because these claims are directed to the abstract idea of

13  informing users about nearby properties for sale, and because

14  they don't supply an inventive concept, these claims are all

15  invalid under Alice.

16       So if it please the Court, I'll reserve the remainder of

17  my time for rebuttal.  Thank you.

18       THE COURT:  You know, Mr. Liddell, I've been asking people

19  a question this week when they say that.  Since I don't put

20  time limits on anybody, I'm not sure exactly what time it is

21  you're reserving.  But I hear everyone say that at the end of

22  their deal.  So, now, maybe you've been listening to Supreme

23  Court arguments which are much more august than mine.  So but

24  it -- you did a very good job.

25       Who will I hear from the defendant -- I'm sorry -- from

1    the plaintiff?

2         MR. HOLOHAN:  Good morning, Your Honor.  This is Matt

3    Holohan from Sheridan Ross for the plaintiff.

4         THE COURT:  Welcome.

5         MR. HOLOHAN:  Thank you.

6         I'd like to share my presentation.

7         THE COURT:  They're not very happy with you.  I mean,

8    eight patents -- you couldn't get one -- you have eight patents

9    and you couldn't get one right.  So it's a big Section 101

10   motion.

11        MR. HOLOHAN:  Understood, Your Honor.  I'm trying to --

12   all right.  So thank you for your time.

13        May it please the Court.

14        We believe, as stated in our briefings, that REW's motion

15   is premature.  We'll explain why.

16        Should the Court be inclined to entertain REW's motion on

17   the merits, we believe that it should be denied on the merits

18   because the SA patents satisfy both steps of the Alice inquiry

19   and any deficiencies that may be recognized as a result of

20   REW's motion could be cured within an amended complaint.

21        So beginning with an overview of the technology, I know

22   that there's a vast chasm of disagreement between the parties

23   as to the nature of the invention, the underlying technology,

24   which is not surprising, in the Section 101 motion.

25        (Clarification by the reporter.)

17

1      MR. HOLOHAN:  As the specification recognized, there were

2  several problems in -- as in preexisting communication

3  technology to shop for real estate, and these weren't just

4  problems of efficiency.  They were problems of reliability and

5  the types of information that could be exchanged between a

6  customer and an entity selling real estate.

7      So in the conventional network in the prior art, the

8  individual would spot a house for sale, they would need to find

9  a phone, they would somehow communicate information about the

10  house that was often unreliable and relied on memory to a real

11  estate agent.  The real estate agent, using a conventional

12  phone, would consult often static databases or even printed

13  books returning additional out-of-date and often unreliable

14  information to the customer.

15      And these problems were all elucidated in the

16  specification and identified as technical problems that were

17  going to be solved using new technical approaches to the

18  process of identifying real estate.

19      As I mentioned, there was the delay between spotting the

20  house and obtaining information during which the information in

21  the user's head could be degraded and be rendered unreliable.

22  There was limited information available to the real estate

23  agent when they received the phone call.  And then once the

24  customer and the agent went out into the field, there was a

25  very limited ability to adjust their strategy on the fly.

1      The Smarter Agent approach is not simply a matter of

2  replacing a human with a computer.  It's implementing technical

3  solutions and technical functions that were simply not

4  available in the prior art conventional approaches.

5      Here, using a mobile device, again, years before iPhone

6  and years before the ubiquity of smartphones, a user could

7  instantaneously transmit their geolocation information to a

8  remote database that would have up-to-date information not only

9  as to the house the user saw but nearby houses that could be

10  easily and quickly identified based on that geo data.

11      And the SA patents, in addition, contemplate a user

12  interface beyond simply a voice phone that would not only

13  present additional information, more detailed information and

14  more reliable information to the user, but would also allow the

15  user to transmit information about the property into the

16  database to further enhance the reliability and utility of that

17  database.

18      Well, it's summarized here.  The location -- the

19  customer's location is made available to a remote database

20  instantaneously.  There's immediate access to current

21  information.  The customer can update information in the

22  database, and the user interface facilitates the information

23  exchange and retrieval.

24      These are not simply human problems and human activities

25  that are replaced by a computer.  This is enhanced computer and

network functionality that improves the reliability of
conventional systems.

And just to summarize it further, this is directly from
the specification illustrating the process, you know, with
annotations based on the written description.

You have the mobile device transmitting location
information via a network to an information system.  The
information system transmits the location-centric information,
the information relevant to the location, via the same network.

Before we get into the merits further of the inventive
concept and the nonabstract ideas of the Smarter Agent patents,
as stated in our briefs, we believe that (inaudible) counsel's
denying REW's without prejudice to be revisited later in the
case, as this Court did in Slyce.

All of the concerns that the Court spelled out in its
Slyce decision are present here.  There is a statutory
presumption of validity.  Certain of these patents were
examined post-Alice.  There was no significant change in how
the examiner evaluated the eligibility of these patents.

We -- the Patent Office is entitled to the legal
presumption that the examiner knew Alice, knew the legal
requirements for patent eligibility, properly applied those
standards and allowed the patents to issue.

So REW is still obligated to prove by clear and convincing
evidence that both Step 1 and Step 2 fail on the merits to have

1   these patents declared invalid.

2        No discovery has been taken.  I know that Mr. Liddell

3   questioned what discovery would be necessary.  As expressed in

4   detail in our briefs, we now at the very least have an expert

5   in the case who could be deposed and could be challenged and

6   whose factual expert opinions could be explored prior to any

7   complete resolution of REW's Section 101 challenge.

8        Also, there has been no claim construction.  I certainly

9   would not want to use Dr. Yi's illness as an advantage in this

10  motion.  We also wish him well and we're sorry that we could

11  not proceed to Markman today.  But the fact is that even if we

12  had our Markman hearing today, the entire Section 101 issue

13  would have been briefed without the benefit of this Court's

14  claim constructions.

15       And we did identify at least one claim term in our briefs

16  that would weigh on the Alice inquiry which is information

17  system.  REW has taken the position that it's just a server,

18  and we've taken the position that it could be more than that.

19  And it is described as more than that in the specification.

20       Our brief also extensively discusses the use of up-to-date

21  current and dynamic information.  REW has advanced a proposed

22  construction of "dynamic" which would be very limited and

23  essentially non-(inaudible).  That would weigh on this inquiry

24  as well.

25       And the fact that our -- SA's baseline position is that

1    the claims should be afforded their plain and ordinary meanings

2    does not mean that the claim terms are irrelevant to the

3    Section 101 inquiry.  It just means that the question of

4    whether they're going to be afforded their plain and ordinary

5    meanings versus getting constrained and limited constructions

6    proposed by REW will weigh on this inquiry, which ultimately is

7    a factual inquiry, at least as to Step 2.

8          And I did just want to mention the American Axle case.

9    Obviously as we sit here, the Supreme Court's Alice decision

10   and the precedential Federal Circuit decisions applying that

11   case are the law of the land.  But given the anticipated timing

12   should the Court enter a judgment against Smarter Agent on the

13   pleadings, there's a reasonable likelihood that the Section 101

14   law will be unsettled in the next few months as the Supreme

15   Court reaches resolution on the American Axle cert petition.

16         So in addition to all of the reasons set forth in the

17   Slyce decision, we think that the pendency of the American Axle

18   case is an additional consideration that would counsel denying

19   REW's motion without prejudice.

20         And just to reiterate what this Court recognized in Slyce,

21   this is a 12(b) motion which means that the plaintiff's

22   allegations are accepted as true.  We should be given leave to

23   amend if there are any deficiencies.

24         So we're happy to file an amended complaint, but we

25   believe that the allegations in the complaint and what is

1    reflected in the patents themselves when accepted as true are

2    sufficient to withstand REW's motion at this stage.

3         So in the first instance we would ask that REW's motion

4    simply be denied without prejudice.

5         THE COURT:  Mr. Liddell?

6         MR. HOLOHAN:  Your Honor.

7         THE COURT:  Oh, I'm sorry.  Were you not done?

8         MR. HOLOHAN:  No -- yes, Your Honor.  I'm going to go

9    through the merits of Step 1 and 2.

10        THE COURT:  Okay.

11        MR. HOLOHAN:  Thank you, sir.

12        So moving on to the merits, should the Court be inclined

13   to consider the motion on the merits, just to reiterate, this

14   is the conventional network that the SA inventors were aware of

15   when they came up with their idea.

16        THE COURT:  Well, Mr. Holohan, I may have subliminally

17   given away why I -- it does make sense to me, at a minimum, to

18   allow you to replead your complaint as a first step.  I think

19   that is a step that most judges take.  And so I am persuaded

20   that -- I'm going to allow you to do that.

21        And so how long would you need to file an amended

22   complaint?

23        MR. HOLOHAN:  I would like to hear from Mr. Brunelli and

24   Mr. Smith on this, but I think 14 days would be reasonable.

25        THE COURT:  Okay.  So here's what we're going to do.  We

1  will -- I'm going to give you 14 days to replead.  If you need

2  more, I mean, it's your case.  I'd rather you do it well than

3  do it quickly.  If you can do it well and quickly, that's fine

4  too.  If you need more than 14, I'll give you whatever time

5  you'd like.

6      14 days, a month, what would you like?

7      MR. BRUNELLI:  We'd like 21 days, Your Honor.

8      THE COURT:  Okay.  I'm going to give you 21 days.  Once

9  you have filed your amended complaint, my sense is that much of

10  what Mr. Liddell is concerned about will remain -- he will

11  remain concerned about; however, you will have taken away from

12  him the ability of -- to say, we just needed to replead it.

13      So have -- did we give you a date by when we were going

14  to -- that we were going to reset the Markman on?

15      MR. HOLOHAN:  I don't believe so, Your Honor.

16      THE COURT:  Okay.  I -- so here's what I'm going to tell

17  you:  You all are at a perilous time on the 27th, only in the

18  sense that we have all new clerks coming in.  We're

19  transitioning clerks.  And so I don't want you all to become a

20  victim of a missed handoff here for some reason, and so -- even

21  though Josh is usually pretty good about keeping, you know,

22  this on track.

23      So what I would do is:  Next week I would reach out --

24  today or next week reach out to -- is it Josh that's setting

25  this for us?

1      And I know -- it is -- well, just make sure if you don't

2  get a setting, a setting for your hearing on the Markman

3  relatively quickly, do not be shy about letting me know,

4  because we have a lot going on in the next -- over the next

5  week in transitioning from one set of clerks to another and I

6  don't want you all's Markman -- you know, it may -- for all I

7  know, the way we do things, it -- someone will think it got

8  done today and not get rescheduled.

9      And occasionally lawyers are afraid to call judges and

10  say, hey, you know, we need this.  So I'm strongly encouraging

11  you, if you don't get a reset of your Markman in the very near

12  future, please let us know and we will -- and we'll get that

13  set, okay?

14      And then once -- Mr. Liddell, once you have the new

15  amended complaint, if you're unhappy with it, same for you.

16  Let my clerks know and we'll reset this hearing, and we can

17  take the motion up again.

18      Is there anything else that we need to take up this

19  morning?

20      MR. LIDDELL:  Not from the defendants, Your Honor.

21      MR. HOLOHAN:  Your Honor, just to clarify.

22      THE COURT:  Yes, sir.

23      MR. HOLOHAN:  Once we file the amended complaint, will the

24  procedure be for REW to simply advise the Court that their

25  original motion stands?  Or would they be --

1    THE COURT:  They can do -- they can tell me the original

2  motion stands or they can file a new one.  It's entirely up to

3  them.

4    MR. HOLOHAN:  All right.

5    THE COURT:  And if they file a new motion, obviously

6  there's going to be additional cycles of briefing, which would

7  probably be helpful.

8    But I'll allow Mr. -- I'll allow defendant -- I will allow

9  the defendant to decide whether or not they think that their

10  arguments apply to your amended complaint and we can move

11  forward or whether or not they need a new motion.  If they file

12  a new motion, you'll certainly be given an opportunity to file

13  a response.

14    MR. HOLOHAN:  Understood, Your Honor.  Thank you for the

15  clarification.

16    THE COURT:  No.  Thank you for asking.

17    Anyone, anything else?

18    MR. SMITH:  No, Your Honor.

19    MR. GREENE:  No, Your Honor.

20    THE COURT:  Okay.  Have a great weekend.  And like I said,

21  please stay on us to get the Markman rescheduled.  I want to

22  make sure we take care of that for you all.  And I want to make

23  sure that when this gets ripe again that you let us know so

24  that we can take it up if we need to.

25    But have a good weekend in the interim.  Take care.

1              (Hearing adjourned at 10:07 a.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  UNITED STATES DISTRICT COURT )

2  WESTERN DISTRICT OF TEXAS    )

3

4       I, Kristie M. Davis, Official Court Reporter for the

5  United States District Court, Western District of Texas, do

6  certify that the foregoing is a correct transcript from the

7  record of proceedings in the above-entitled matter.

8       I certify that the transcript fees and format comply with

9  those prescribed by the Court and Judicial Conference of the

10 United States.

11      Certified to by me this 6th day of September 2021.

12
                              */s/ Kristie M. Davis*
13                            KRISTIE M. DAVIS
                              Official Court Reporter
14                            800 Franklin Avenue
                              Waco, Texas 76701
15                            (254) 340-6114
                              kmdaviscsr@yahoo.com
16

17

18

19

20

21

22

23

24

25